## CLEVELAND ALLERTON HOTEL, Inc. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 10558.

Circuit Court of Appeals, Sixth Circuit.
March 22, 1948.

M. R. Schlesinger, of Cleveland (M. R. Schlesinger, of Cleveland, on the brief; Horwitz, Kiefer & Harmel, of Cleveland, of counsel), for petitioner.

Louise Foster, of Washington (Theron L. Caudle, Sewall Key, George A. Stinson, and Louise Foster all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and MILLER, Circuit Judges.

SIMONS, Circuit Judge.

The tax problem posed by the present appeal is one for the solution of which there is no precedent. It is clearly a case of first impression, and involves the question whether a lessee in possession, owning and operating a hotel building on leased premises, who purchases the fee from the lessor for a price greater than the value of the land, may allocate a portion of the purchase price to the purchase of the unexpired lease either by deducting the allocated portion as a business expense in the year of purchase or depreciate it over the term of the lease or the anticipated useful life of the hotel building. The Tax Court decided that the petitioner could do none of these things, and the taxpayer seeks review.

The case involves tax liability for 1941 and 1942. Deficiencies were asserted for such years by the respondent. In 1941, the petitioner was the owner of a 16-story brick and steel hotel in Cleveland, built upon leased ground. With details of its acquiring possession, we are not presently concerned. The lease had an unexpired term of 80 and a fraction years, and the ground rent was $25,000 a year. The petitioner concluded that its rent was excessive by at least $15,000 a year, and that ultimately it might lose its building, if it found no escape from the obligation. After

negotiating with the owners of the fee, it submitted a written offer to purchase the fee for the sum of $441,250, in cash, and the offer was accepted in writing by the owner of the land. On March 19, 1941, the purchase was consummated by payment of the money and the delivery to petitioner of the lessor's deed, which not only conveyed title to the real estate, but recited that the lease and the estate thereby created should merge in the title, the grantor acknowledging that all of the covenants, provisions, and conditions of the lease had been fully performed.

The petitioner in its tax returns for the tax years sought a deduction in substantial amount for part of the purchase price, on the ground that it was paid, not for the real estate but to be relieved of an improvident rental obligation, that consideration for the release could accurately be measured by the difference between the fair value of the real estate and what it was obliged to pay therefor, and that such amount was an expense of doing business. It here contends that the deduction was allowable in full in 1941, or in the alternative that it should be permitted to amortize it either over the term of the lease or the anticipated useful life of the building. The respondent contends that the deduction may not be granted in either form and the Tax Court agrees.

The petitioner argues that its primary purpose was to buy its way out of that portion of its leasehold obligation which was excessive and that its purchase of the fee was merely incidental to that purpose. It could not, it says, have merely secured escape from a burdensome lease and leave the premises because it owned a valuable building thereon. It had no need for the fee simple title because it already had full possession and use of the land by the provisions of the lease for its unexpired term. Uncontradicted testimony supports the petitioner's assertion of its purpose and the necessity for buying the land to escape from the lease. Its claim that the value of the land was no more than $200,000 is supported by credible and uncontradicted evidence, which the Tax Court finds establishes that if there were no lease to be considered the value of the land would be $200,000. The petitioner concedes that, neither in the negotiations to purchase nor in the contract which eventuated, was there any designation of consideration separately assignable to the purchase of the leasehold or to the reversionary interest in the land, but urges that such allocation has no bearing on the problem for if the transaction is to be viewed realistically, what it paid over and above the fair value of the real estate must necessarily have been paid to escape an excessive rental obligation. The respondent argues that the price of all land is almost wholly determined by the amount prospective purchasers will receive through its ownership and use, that the land in 1941, by reason of a very profitable lease, secured by the hotel building, was a capital asset, which either to the lessee or to other prospective purchasers would fully support the price that was paid for it. He reasoned that a prospective owner in April 1941, whether taxpayer or third person, would annually produce from the land $25,000, and that the capitalization of this return at an acceptable interest rate controls the value of the land. He also relies on the fact that there was no allocation of the purchase price separately to land or lease, so that there is no basis for the allowance of a deduction either by treating any part of it as 1941 expense, or by amortizing it over the term of the lease or the useful life of the hotel building.

As purely legalistic formalism, this argumentation bears an aura of validity. Realistically considered, however, it will not stand analysis. The status of the petitioner does not approximate that of a third person investor, buying real estate to which is appurtenant a long-term profitable lease. The petitioner already had the use of the land with full control and dominion over it, subject only to its obligation to surrender it at the end of the term. The lease was a liability which it sought to extinguish. This it was impossible to do merely by buying acquittance and giving up possession of the premises. It had thereupon a valuable hotel building which it could not take away with it. The only interest in the land it secured by the purchase that it did not already have was the reversionary interest, which all parties appear to consider

as of only nominal value. To consider that remainder a capital asset with a value of $441,250 requires, it seems to us, a naivete not attributable to experienced and sophisticated taxing authority. The usual conception of capital assets is that of property devoted to the production of income. True, it may not always consist of concrete things, as for instance in the case of franchises, good will and the like, but funds expended by way of liquidated damages for release from contract do not ordinarily buy capital assets.

■ If numerous admonitions that taxation is a practical matter, that taxing authority may look through form to substance, is not mere rhetoric where the taxpayer's interest is involved, and a working formula only when it is of advantage to the Treasury, it would seem to be clear that the petitioner paid all over $200,000 to escape from a burdensome lease, and should be able to write that off as an expense of doing business.

A second ground for the Tax Court decision was that it was unable from the facts of the case to allocate any portion of the purchase price of the land involved to release from the lease, and so was unable to find any basis for a depreciation deduction. But the Court had found it to be established that the land without the lease had a value of $200,000. The rest we think would be simple arithmetic. In determining a base for depreciation of improved property purchased without allocation of consideration to buildings as distinguished from real estate, there has never been any difficulty in determining the value of the improvements, nor of the value of improvements as income to the lessor where a lease is subsequently cancelled or forfeited, nor of a base for obsolescence of leasehold interests, or of mineral rights not valued separately from the fee. Cf. Limericks, Inc., v. Commr., 5 Cir., 165 F.2d 483.

■ While the petitioner's evidence may have suggested the view that it was entitled to deduct the whole purchase price, with interest in the reversion treated as negligible, it now seems perfectly clear that the petitioner's position is that only that part of the consideration which it paid for the deed over and above $200,000 should be allocated as an expense paid to escape its rental obligation under the lease. This being so, we find ourselves in accord with the decision of the Third Circuit in Cassatt v. Commissioner, 3 Cir., 137 F.2d 745, and with the decision of the Board of Tax Appeals in Appeal of Denholm & McKay Co., 2 B.T.A. 444, that payments of this character must be deducted on the taxpayer's tax return as an expense of doing business in the year when made. The reason set forth in the Cassatt case is that such payment is not prepayment of rent to secure future tenure, but is in consideration of cancellation (or surrender) and so in the nature of damages to secure relief from unprofitable contracts. This being our view, it is unnecessary to consider the petitioner's alternative contention in respect to the amortization of its original rental obligation over the term of the lease or the anticipated useful life of the hotel building.

Reversed and remanded to the Tax Court for such further proceedings consistent herewith.