MILLINERY CENTER BUILDING CORP. (NOW FASHION CENTER BUILDING CORP.), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36321.    Promulgated February 26, 1954.

*Bernard Weiss, Esq.,* and *Sidney Gelfand, Esq.,* for the petitioner. *John J. Madden, Esq.,* for the respondent.

820

OPINION.

Black, *Judge:* Petitioner states the issues raised by the pleadings, in its brief, as follows:

I

Is the petitioner entitled to deduct the amount of $1,500,000 or any part thereof incurred in connection with the cancellation of a burdensome lease as an

ordinary and necessary expense under Section 23(a) or as a loss under Section 23(f) of the Internal Revenue Code? Or, in the alternative, is the petitioner entitled to amortize the said $1,500,000 or any part thereof incurred in obtaining a release from the burdensome 21 year lease over the remaining term of such lease?

## II

In the further alternative, is the petitioner entitled to capitalize that part of the price paid of $2,100,000 over and above the actual land value as the purchase price of the building and depreciate said cost of building over the remaining building life of 30 years?

## III

Is the petitioner entitled to deduct that part of the $16,500.00 legal expenses incurred to acquire the fee and to cancel a burdensome lease that is applicable to the cancellation of the burdensome lease?

The principal issue in this proceeding is whether petitioner, a lessee in possession who purchases the fee and the cancellation of the lease for a price greater than the value of the land, may allocate a portion of the purchase price to the purchase of the lease and deduct the allocated portion as a business expense under section 23(a) of the Code. Respondent in his deficiency notice determined that "No allowance has been made with respect to a payment by you to allegedly obtain the cancellation of a lease, in the absence of information showing that a deductible business expense was incurred." Respondent still contends that no part of the purchase price of $2,100,000 paid by petitioner in 1945 to the Wendel Foundation can be deducted as a business expense and that petitioner is not entitled to use any part of this purchase price as a basis for amortization or depreciation deductions. For reasons which we will presently give, we think respondent must be sustained in each of these contentions.

### Business Expense.

Petitioner paid $2,100,000 under the agreement of May 11, 1945, to the Wendel Foundation. Credible and uncontradicted testimony placed the value of the land at $660,000, if it had been in an unimproved condition at the time of purchase. But it must be remembered that petitioner did not purchase the land in an unimproved condition. The land, when petitioner purchased it in 1945, was improved by a building which had been erected by petitioner in a prior year at a cost of $3,000,000, and the land was leased to petitioner for a term of 21 years still to run at an annual rental of $118,840. What petitioner paid Wendel Foundation $2,100,000 for was the bundle of rights which it obtained in the purchase. Included in this bundle of rights was the cancellation of the lease which still had 21 years more to run. Petitioner contends that all above $660,000, which was the value of the land if it had been in an unimproved condition, or $1,440,000, represented the price which it paid for the cancellation of its lease and that this entire amount of $1,440,000 should be allowed in the

taxable year 1945 as a deductible business expense under section 23(a) of the Code printed in the margin.[1] Petitioner, in contending that the entire amount of $1,440,000 should be allowed as a deduction for business expense in the taxable year, relies heavily upon *Cleveland Allerton Hotel, Inc.* v. *Commissioner*, 166 F. 2d 805, reversing Memorandum Opinion of this Court. In that case the Court of Appeals said:

As purely legalistic formalism, this argumentation bears an aura of validity. Realistically considered, however, it will not stand analysis. The status of the petitioner does not approximate that of a third person investor, buying real estate to which is appurtenant a long-term profitable lease. The petitioner already had the use of the land with full control and dominion over it, subject only to its obligation to surrender it at the end of the term. The lease was a liability which it sought to extinguish. This it was impossible to do merely by buying acquittance and giving up possession of the premises. It had thereupon a valuable hotel building which it could not take away with it. The only interest in the land it secured by the purchase that it did not already have was the reversionary interest, which all parties appear to consider as of only nominal value. To consider that remainder a capital asset with a value of $441,250 requires, it seems to us, a naivete not attributable to experienced and sophisticated taxing authority. * * *

If numerous admonitions that taxation is a practical matter, that taxing authority may look through form to substance, is not mere rhetoric where the taxpayer's interest is involved, and a working formula only when it is of advantage to the Treasury, it would seem to be clear that the petitioner paid all over $200,000 to escape from a burdensome lease, and should be able to write that off as an expense of doing business.

We are unable to agree with the learned court that in a case like the *Cleveland Allerton Hotel* case or the one which we have here, the taxpayer should be allowed to deduct as a business expense in the year when paid that part of its payment which it claims should be allocated to the cancellation of a burdensome lease. The court in holding that the amount which the taxpayer claimed should be allocated to the cancellation of the burdensome lease and should be allowed as a deductible business expense in one year said:

This being so, we find ourselves in accord with the decision of the Third Circuit in Cassatt v. Commissioner, 3 Cir., 137 F. 2d 745 and with the decision of the Board of Tax Appeals in Appeal of Denholm & McKay Co., 2 B. T. A. 444, that payments of this character must be deducted on the taxpayer's tax return as an expense of doing business in the year when made. * * *

---

SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
  (a) EXPENSES.—
    (1) TRADE OR BUSINESS EXPENSES.—
      (A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered ; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business ; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

We think *Cassatt* v. *Commissioner*, 137 F. 2d 745, affirming 47 B. T. A. 400, and *Denholm & McKay Co.*, 2 B. T. A. 444, are distinguishable. In *Denholm & McKay Co.*, the taxpayer did not own the building which it was renting. Both building and land were owned by the Denholm & McKay Realty Co. and what the taxpayer purchased from the Realty Co. was a complete cancellation of the lease and a surrender of possession under that particular lease and the securing of a new lease of the same building under much more favorable terms than the old lease. Denholm & McKay did not acquire title to the land from the Realty Co. In *Cassatt* v. *Commissioner*, *supra*, the court pointed out that:

> In the early part of January, 1935, Cassatt and Company were obligated on several leases of office space for terms not expiring until 1941. The aggregate prospective rentals for these leases was $1,076,000. A settlement was effected with the various landlords whereby for $346,524.06 the leases were cancelled for the unexpired terms. * * *

Thus, in that case there was not only a cancellation of the leases but a complete surrender of possession thereunder to the landlords.

We have no such case here. As we have already pointed out, petitioner, in making purchase of the cancellation of the lease from Wendel Foundation, had no notion of surrendering possession to the landlord. If it had done so, we would, of course, have an entirely different case from the one we have here. It owned a 22-story steel and concrete building which, according to testimony, had a remaining useful life of 30 years. What petitioner purchased for $2,100,000 is shown in its contract of purchase dated May 11, 1945, followed by the deed to the property which petitioner received on June 11, 1945. Petitioner purchased a capital asset and we sustain the Commissioner in his determination that no part of the purchase price can be deducted as a business expense in 1945. Cf. *Home Trust Co.* v. *Commissioner*, 65 F. 2d 532.

### *Claim for Amortization Deduction.*

Petitioner's first alternative is stated thus in its brief:

> However, in the event the Court should find that the amount paid in excess of the land value to effect a saving in rent expense is a capital asset, petitioner then claims it is entitled to amortize said asset over 21 years, the remaining life of the cancelled lease.

Petitioner does not cite any authority in support of this first alternative contention and we do not know of any. It is, of course, true that if a taxpayer purchases a lease which has, say 21 years to run, and does not purchase the fee his purchase is a wasting asset and the cost of the lease is not deductible in the year of purchase but must be amortized over the life of the lease. See *Home Trust Co.* v. *Commissioner*, *supra*, and many cases there cited. But here petitioner has not purchased any lease. In the transaction which has been consummated petitioner has obtained title to the land and has secured

the cancellation of the lease which, under the circumstances then existing, it regarded as burdensome. It is true, of course, that petitioner in the purchase of land acquired a capital asset but it is not an asset which is subject to depreciation or amortization. Its value may increase from year to year or, on the other hand, may decrease but gain or loss can be taken only when the land is finally disposed of. But, while it is true that petitioner in the purchase of the land in 1945 acquired a capital asset, we do not think it can be said that petitioner in procuring the cancellation of its burdensome lease acquired a capital asset which it can amortize over the remaining term of the lease. The lease was at an end when petitioner procured its cancellation in 1945. We think petitioner's first alternative contention must be denied.

### Additional Depreciation on the Building.

Petitioner's second alternative is stated in its brief, as follows:

In the event the Court should find that no part of the payment of $2,100,000 represents an allowable deduction for obtaining a release from a lease agreement, petitioner then contends that $1,500,000 represents the cost of building which it is entitled to depreciate over a remaining life of 30 years.

The following facts with reference to depreciation seem to be undisputed by the parties: The respondent, for the taxable year, has allowed petitioner depreciation on the building equivalent to petitioner's unrecovered cost because its first 21-year term of the lease ended in 1945. That depreciation deduction is not in dispute here. During this original 21-year term of the lease, including the part of it which expired in 1945, petitioner has recovered tax free through depreciation deductions the entire 3 million dollar cost of erecting its building. Petitioner has claimed, however, on its return for 1945, that it acquired the building in effect for the second time in 1945 and has claimed depreciation on this second cost. This latter amount of depreciation the Commissioner has disallowed and has confined his allowance for depreciation deduction to petitioner's unrecovered cost of its building. Petitioner having fully recovered the cost of its building by way of depreciation deductions in 1945 and prior years had no unrecovered cost of its building.

We think that the bundle of rights which petitioner acquired by its contract of purchase of May 11, 1945, followed by the deed of June 11, 1945, was so inextricably entwined in the acquiring of the land as not to be separable therefrom. We think that no part of the $2,100,000 which petitioner paid can be allocated to the cost of the building which petitioner already owned and which it had been allowed to fully depreciate over the first 21-year term of the lease. The building and the lease were not bargained for or purchased separately. They were included, insofar as the lessor had any interest therein, in the single

transaction of the contract of purchase of the land and the deed to petitioner thereof. If petitioner were allowed additional depreciation deductions for the building which it claims in its second alternative, it would then have depreciated the building once since it has been erected and paid for by petitioner and a second time because it had purchased the land under the building. Petitioner cites no case which would support such a deduction and we know of none. Petitioner's second alternative is denied.

The only other issue which remains for our decision was stated in petitioner's brief as follows: "Is petitioner entitled to deduct that part of the $16,500.00 legal expenses incurred to acquire the fee and to cancel a burdensome lease?" The Commissioner in his disallowance of this deduction stated in his deficiency notice: "Deduction of legal expenses, in the amount of $16,500.00, incurred in connection with the acquisition of your property has been disallowed because it represents a capital expense." We think the Commissioner must be sustained in the disallowance of this claimed deduction. It was made to obtain capital assets and, as such, did not represent a deductible expense.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

WITHEY, *J.*, concurs in the result.

---

ARUNDELL, MURDOCK, OPPER, TIETJENS, RAUM, and RICE, *JJ.*, dissenting: Some part of the purchase price should be allocated to the additional rights in the building acquired in the purchase, using the principle of *Cohan v. Commissioner*, 39 F. 2d 540, if necessary. This additional cost of the building would then be recovered through depreciation.