## MILLINERY CENTER BUILDING CORP. *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 255.   Argued March 1, 1956.—Decided March 26, 1956.

*Bernard Weiss* argued the cause and filed a brief for petitioner.

*Hilbert P. Zarky* argued the cause for respondent.   On the brief were *Solicitor General Sobeloff, Assistant Attorney General Holland, Ralph S. Spritzer, A. F. Prescott* and *Louise Foster.*

Mr. Justice Frankfurter delivered the opinion of the Court.

This case involves an interpretation of § 23 (a)(1)(A) of the Internal Revenue Code of 1939, as amended, 26 U. S. C. § 23 (a)(1)(A), providing for the deduction from gross income, in computing net income, of all the "ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business . . . ." The Commissioner determined a deficiency in petitioner's excess-profits tax for 1945; petitioner sought a redetermination of its liability in the Tax Court, which made the following findings of fact. In April 1924, petitioner leased land in New York City for 21 years, with an option to renew the lease for two further 21-year periods. In accordance with the terms of the lease, it erected a 22-story loft building at a cost of $3,000,000. The lease, as amended in 1935, provided for an annual rental of $118,840. Title to the building was in petitioner, but at the eventual termination of the lease it would vest, without payment, in the lessor, at the lessor's option. The lessor could also require petitioner to remove the building at that time. Petitioner had the obligation, in case of destruction of the building, to rebuild at its own cost. During the first 21-year period of the lease, petitioner fully depreciated the entire $3,000,000 cost of the building. In April 1945, it exercised its option to renew the lease until April 1966.

In May 1945, petitioner entered into an agreement with the owner whereby it purchased the fee and obtained release from the obligations of the renewed lease. The price paid was $2,100,000. The Tax Court also found that the value of the land, as unimproved, was $660,000 when purchased by petitioner in 1945.

The principal issues raised by petitioner relate to its attempt to deduct $1,440,000—the difference between the

purchase price under the May 1945 agreement and the 1945 value of the unimproved land—as an ordinary and necessary expense of doing business. The Tax Court held that the difference could not be so deducted, that the difference could not be amortized over the remaining term of the cancelled lease, and that no annual depreciation could be taken because the cost of the building had already been fully depreciated and the purchase price could not be separated into purchase price for building and purchase price for land. 21 T. C. 817. Six of the judges of the Tax Court dissented on the ground that "[s]ome part of the purchase price should be allocated to the additional rights in the building acquired in the purchase . . . ." 21 T. C., at 826.

On petition for review, the Court of Appeals for the Second Circuit reversed and remanded. It affirmed the refusal to permit a deduction under § 23 (a), but reversed the holding that no amount could be added to the asset value of the building for purposes of depreciation. Rejecting petitioner's argument that it should be allowed to amortize the $1,440,000 over the unexpired term of the cancelled lease, it accepted petitioner's alternative argument that depreciation over the remaining useful life of the building should be allowed. Stating that "[o]n the present state of the record we cannot determine how much of the $2,100,000 purchase price is properly to be allocated to the land and how much to the building," it remanded the case to the Tax Court to fix the respective values. 221 F. 2d 322, 324. Petitioner sought a writ of certiorari to review the disallowance of its claim for a deduction as a business expense or, alternatively, as amortization over the remaining period of the lease. The Government did not seek review of the allowance of depreciation of that portion of the purchase price allocable to the building over its remaining economic life. Because of the apparent conflict between the decision of the Court of Appeals for

the Second Circuit in this case and the decision of the Court of Appeals for the Sixth Circuit in *Cleveland Allerton Hotel, Inc.* v. *Commissioner of Internal Revenue,* 166 F. 2d 805, we granted certiorari, limited to the questions set forth in the margin.[1]

Under the terms of the lease, petitioner had a 21-year lease on the land, with an option to renew, and similar rights in the building which it had constructed. Petitioner introduced evidence to show that the rent it was paying under the lease was greatly in excess of the fair rental value of the land as vacant, unimproved land. Petitioner contends that it already owned the building and that therefore the purchase agreement was entered into for the purpose of avoiding the excessive rentals of the lease. This transaction, it asserts, involved a current business expenditure, and the $1,440,000 in excess of the vacant land value represents what it was willing to pay to avoid this onerous lease.

Petitioner's claim that it "owned" the building is based on a loose and misleading use of "owned." The only way petitioner could continue to use the building after termination of the initial period of the lease was by renewing the lease, and the lease also circumscribed its control over the building. It could make use of the building for the remainder of its economic life, but only

---

[1] "1. Where a lessee, the owner of a valuable building on leased land, acquires the fee to the land to be relieved of what it considers to be the burdensome terms of a lease, may the lessee deduct the excess of the payment over the determined value of the land at the date of purchase as an ordinary expense of doing business under § 23 (a) of the United States Internal Revenue Code of 1939 or under § 23 (f) as a loss on a transaction entered into for profit and not compensated for by insurance or otherwise.

"2. In the alternative, may the lessee-petitioner consider the excess payment over the determined value of the land to be in the nature of a prepayment of rent for the remaining term of the extinguished lease and amortize such amount over 21 years?" 350 U. S. 820.

on payment of the stated rent. Petitioner's evidence with respect to the rental value of the land as unimproved is irrelevant. It was using the land as improved by the building; it was paying rent for the land as improved by the building. Petitioner tendered no evidence that it was paying excessive rent for what it was actually leasing. A complementary feature of the purchase of the lessor's interests in the land and building was the elimination of the obligation to pay rent on the improved land. The purchase price presumably reflected this situation. Whatever possible merit petitioner's contention might have were there proof of excessive purchase price can await such a case. The purchase price paid by petitioner represents the cost of acquiring the complete fee to the land and the building, and no deduction as an ordinary and necessary business expense can be taken.[2]

Petitioner claims that even if it cannot get a deduction as an ordinary and necessary business expense under § 23 (a) or as a loss under § 23 (f), it should be allowed to amortize the excess of the payment of $2,100,000 above the determined land value of $660,000 over the 21-year remaining term of the extinguished lease. What petitioner acquired in this transaction, however, were both rights with respect to the land and rights with respect to the building. The Tax Court has not yet fixed that amount of the purchase price which is allocable to the acquisition of rights in the land and that which is allocable to the acquisition of rights in the building. These rights are assets with useful lives having no reference to the term of the lease. Successive steps of securing or renew-

---

[2] Petitioner asserted, but did not argue, the permissibility of the deduction of the $1,440,000 as a loss under § 23 (f). Such an assertion is apparently premised on the assumption that the $1,440,000 represents the sum paid for commutation of the rent payments under an onerous lease, and further discussion of this argument is unnecessary.

ing a lease and then purchasing the reversion should not result in amortization over the term of the lease when the purchase of the whole fee at one time would result in depreciation over the useful life of the asset, if the asset acquired were a wasting asset.

Under petitioner's contention, if the purchase had been consummated in 1944 before the first term of the lease had expired, the whole amount of the purchase price not allocable to the land would be amortized in one year. But it should make no difference whether the lease is about to expire or has just been renewed. In the one case, the value of the reversion is enhanced and the value of the right to receive the rent fixed by the lease is depressed because the lease is near an end. In the other case, the value of the reversion is depressed and the value of the right to receive the fixed rent is enhanced because the lease has many years to run. But although there might possibly be some difference in bargaining power between the two situations, the sum total of the rights purchased is the same in each case. Petitioner has acquired two assets—land and a building—whose use it will have for the remainder of their useful lives, and petitioner therefore cannot amortize the cost allocable to the acquisition of the wasting asset over the term of the extinguished lease.

Accordingly, we affirm the judgment of the Court of Appeals for the Second Circuit, leaving to the Tax Court the allocation still to be made.

*Affirmed.*