RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0124p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

ABC BEVERAGE CORPORATION,

*Plaintiff-Appellee,*

No. 13-1701

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids
No. 1:07-cv-00051—Paul Lewis Maloney, Chief District Judge.

Argued: March 18, 2014

Decided and Filed: June 13, 2014

Before: NORRIS, COLE, and GIBBONS, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Gilbert S. Rothenberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Ronald G. DeWaard, VARNUM LLP, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Gilbert S. Rothenberg, Tamara W. Ashford, Richard Farber, Francesca Ugolini, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Ronald G. DeWaard, Brion B. Doyle, VARNUM LLP, Grand Rapids, Michigan, for Appellee.

─────────────────

**OPINION**

─────────────────

COLE, Circuit Judge. At a bottling plant in Hazelwood, Missouri, ABC Beverage Corporation makes and distributes soft drinks and other non-alcoholic beverages for Dr Pepper Snapple Group Inc. ABC leased the facility at first, but after concluding that its rent under the

lease was too high, it exercised an option to buy the property. Appraisals valued the property without the lease at $2.75 million, and ABC determined that the fair market value of the property with the lease would be at least $9 million. ABC eventually bought the property for more than $9 million.

On its tax return, ABC reported $2.75 million as its cost of acquiring the property and deducted $6.25 million as a business expense for terminating the lease. The IRS disallowed the deduction and assessed a tax deficiency; ABC paid the deficiency and sued for a refund. On summary judgment, the district court held that ABC should have been allowed to take the deduction, a decision that led to a multi-million dollar judgment in favor of ABC.

The precise question on appeal is this: may a lessee, who buys the leased property from the lessor for a price greater than the value of the property, immediately deduct as a business expense the portion of the purchase price it paid to buy the unexpired lease, or must it capitalize the entire purchase price? This court has already held that the lessee may take the deduction. *Cleveland Allerton Hotel, Inc. v. Comm'r*, 166 F.2d 805 (6th Cir. 1948). Today we recognize that intervening Supreme Court decisions and statutory changes do not require us to modify our prior decision. Accordingly, we affirm the district court's grant of summary judgment.

## I. BACKGROUND

ABC is a Michigan corporation that makes and distributes non-alcoholic beverages. Through a subsidiary, ABC acquired a company that held a long-term lease on a bottling plant in Hazelwood, Missouri. The lease contained a provision for calculating rent. Shortly after acquiring the lease, ABC concluded that rent due under the lease exceeded its fair market value. For example, an appraisal determined that the fair market value of the rent was $356,000 per year for 1997, but under the lease the landlord demanded $1.1 million in rent that year. The lease also contained a purchase option, which could be exercised only during a specific time period, and a means for calculating the purchase price. The purchase price would be the fair market value of the property, defined to include the value of the unexpired lease, which had a remaining term of 40 years.

ABC exercised its purchase option, but the parties disagreed about how to calculate the purchase price. ABC sent the landlord proposed calculations in which it would pay at least $9 million for the property. The landlord countered with a price of $14.8 million. Eventually, the parties agreed to a purchase price of $11 million, and ABC bought the property in 1999.

ABC obtained three independent appraisals before it bought the property, and all of the appraisals concluded that the value of the property without the lease was $2.75 million. On its 1997 tax return, ABC capitalized $2.75 million as the cost of purchasing the property. It also claimed a business expense deduction of $6.25 million—the difference between the $2.75 million appraisal value of the property and the $9 million ABC calculated it would have to pay for the property with the lease—for buying out the lease. The Internal Revenue Service disallowed the deduction and assessed an income tax deficiency of $2.5 million against ABC. ABC paid the assessment and brought suit for a refund.

In the district court, ABC and the government each moved for summary judgment. The government primarily argued that I.R.C. § 167(c)(2) prohibits ABC from categorizing any part of the purchase price as a distinct business expense for terminating the lease, and therefore the cost of the property must be the entire purchase price. The district court disagreed, holding that § 167(c)(2) did not apply. The court also rejected the government's argument that a Supreme Court case had effectively overruled otherwise binding Sixth Circuit precedent that permitted ABC to deduct the lease termination expense. And the district court quickly dismissed the government's claim that ABC's deduction was barred by I.R.C. § 263(a)(1), which prohibits the deduction of capital expenditures.

The district court also held, despite the government's arguments to the contrary, that ABC had "established the fair market value of the property, that the lease was excessive, and that the amount [ABC] paid to acquire the property over the fair market value of the property is attributable to buying out the onerous lease." The court did find, however, a genuine dispute of material fact, precluding summary judgment, about when ABC could take the deduction. The jury found in ABC's favor on that issue, and the court entered a $2.9 million judgment against the government.

The government now appeals, arguing that the deduction is barred by I.R.C. §§ 263(a)(1) and 167(c)(2), and that intervening Supreme Court decisions have effectively overruled an otherwise binding Sixth Circuit precedent. The district court had jurisdiction under 28 U.S.C. § 1346(a)(1), and we have jurisdiction under 28 U.S.C. § 1291.

## II. ANALYSIS

The government concedes that *Cleveland Allerton*, if it remains good law, controls the outcome of this case and permits ABC to deduct the lease expense. In *Cleveland Allerton*, a hotel stood in ABC's shoes: it ran a business on leased property, concluded that rent was excessive, and sought to escape the burdensome lease by buying the property and lease. 166 F.2d at 805–06. The hotel put forth uncontradicted evidence that the property's value without the lease was $200,000, and it paid $441,250 to buy the property and lease together. *Id.* at 806. The hotel wanted to deduct $241,250 as a business expense for terminating the lease. *Id.* The government disallowed the deduction, arguing that the entire purchase price should be capitalized for two reasons: first, a third-party purchaser would be required to capitalize the entire purchase price, and second, the hotel had not specifically designated the $241,250 as the price of the lease. *Id.* The Tax Court agreed with the government. *Id.*

This court reversed the Tax Court. *Id.* at 807. Looking "through form to substance," we found it clear that the hotel paid $200,000 for the property and $241,250 to escape the burdensome lease. *Id.* at 807. The hotel was not like a third-party purchaser, we reasoned, because the hotel already had full control of the land, subject only to its obligation to surrender the land at the end of the lease. *Id.* at 806–07. For the hotel, the lease was a liability it sought to extinguish; for a third party, the lease would be an asset capable of producing income from rent payments. *See id.* And though the hotel had not allocated a specific amount of the purchase price to the lease, that price could be found simply by subtracting the established value of the property from the total price paid. *Id.* at 807. We therefore held that the hotel was entitled to deduct the amount paid to buy out the lease, even though it incurred the expense while acquiring a capital asset. *See id.*

Over 65 years later, the government asks us to revisit *Cleveland Allerton*. But a published prior panel decision "remains controlling authority unless an inconsistent decision of

the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). No decision of the Supreme Court, nor any statutory change, requires modification of *Cleveland Allerton*.

### A.    *Millinery Center*

First, as the government concedes, the district court correctly found that the Supreme Court's decision in *Millinery Center Building Corp. v. Commissioner*, 350 U.S. 456 (1956), did not abrogate *Cleveland Allerton*. On a set of facts similar to those in *Cleveland Allerton*, the Second Circuit refused to permit a deduction for a lease, which was bought out while acquiring real estate. *Millinery Ctr. Bldg. Corp. v. Comm'r*, 221 F.2d 322, 323 (2d Cir. 1955). The Supreme Court granted certiorari because of the "apparent conflict" between that decision and *Cleveland Allerton*. *Millinery Ctr.*, 350 U.S. at 458–59. But the Court's opinion turned on the petitioner's lack of evidence that the rent under its lease was actually burdensome. *See id.* at 458–60. Absent such evidence, the Court concluded, the petitioner had to capitalize the entire purchase price. *See id.* at 460. Importantly, the Court did not decide whether a taxpayer could deduct the cost of buying out a burdensome lease because, in the facts before it, there was no burdensome lease. Rather, it left open the question before this court again today: "Whatever possible merit petitioner's contention might have were there proof of excessive purchase price can await such a case." *Id.* at 460. Thus, *Millinery Center* does not require us to modify *Cleveland Allerton*.

### B.    *Woodward*, *Idaho Power*, and *INDOPCO*

Nor must we revise *Cleveland Allerton* in light of the three other Supreme Court cases brandished by the government: *Woodward v. Commissioner*, 397 U.S. 572 (1970), *Commissioner v. Idaho Power Co.*, 418 U.S. 1 (1974), and *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79 (1992). In *Woodward*, a majority of the stockholders of an Iowa publishing company voted to extend the company's charter in perpetuity. 397 U.S. at 573. Iowa law required the majority to buy the stock of anyone voting against the extension. *Id.* The majority and dissenting stockholders could not agree on the value of the dissenters' stock, so the majority brought an action in state court to determine the value. *Id.* The majority bought the stock at the price

determined by the court and then claimed deductions for the attorneys', accountants', and appraisers' fees related to the appraisal litigation. *Id.* at 573–74.  The Supreme Court concluded that such expenses must be capitalized.  The Court reasoned that "legal, brokerage, accounting, and similar costs incurred in the acquisition or disposition of [a capital asset] are capital expenditures" because those ancillary expenses "are as much part of the cost of that asset as is the price paid for it." *Id.* at 576.  To determine whether a litigation expense is part of the "cost of acquisition" of a capital asset, which must be capitalized, the Court asked whether the "origin of the claim litigated is in the process of acquisition itself," rejecting the approach that would have instead focused on the taxpayer's "primary purpose" for incurring the expense.  *Id.* at 576–77.

In the second case, *Idaho Power*, a public utility built facilities using its own construction equipment.    418 U.S. at 4–5.    It wanted to deduct the cost of that equipment (*i.e.*, the depreciation on the equipment) as a business expense, but the government disallowed the deduction.  *Id.* at 5–6.  The Court agreed with the government, emphasizing that "established tax principles require the capitalization of the cost of acquiring a capital asset," including "the costs incurred in a taxpayer's construction of capital facilities." *Id.* at 12.  Moreover, under the Tax Code, "an expenditure incurred in acquiring capital assets must be capitalized even when the expenditure otherwise might be deemed deductible" as a business expense.  *Id.* at 17 (citing I.R.C. §§ 161, 167, 261, 263).  The Court noted that the utility's own accounting procedures, which were required by federal and state authorities, recognized construction-related depreciation as part of the cost of acquiring the asset.  *Id.* at 14–15.  The Court also found that a business who hired an independent contractor to build its facilities still would have to capitalize the construction-related depreciation.  *Id.* at 14.  "An additional pertinent factor" in favor of requiring a business who does its own construction work to capitalize construction-related depreciation was maintaining tax parity between the two.  *Id.*  Ultimately, the Court held that "the equipment depreciation allocable to taxpayer's construction of capital facilities is to be capitalized." *Id.* at 19.  By implication, the Court permitted the equipment depreciation not allocable to the construction—for example, when the utility used the same equipment for operation and maintenance—to be deducted.

Lastly, in *INDOPCO,* a chemical company sought to deduct investment banking, legal, and other costs it incurred in connection with its friendly takeover by another company. 503 U.S. at 81–82. The Court held that the costs must be capitalized. It began by noting that "deductions are exceptions to the norm of capitalization" and thus "are strictly construed and allowed only as there is a clear provision therefor." *Id.* at 84 (internal quotation marks omitted). But it recognized that the "distinctions between current expenses and capital expenditures are those of degree and not of kind" and that "each case turns on its special facts." *Id.* at 86 (internal quotation marks omitted). Moreover, one "undeniably important" inquiry is whether the taxpayer realizes benefits beyond the year in which it incurs the expenditure. *Id.* at 87. The Court found that the transaction at issue produced significant benefits to the chemical company that extended beyond the tax year in question, and thus, the Court held, "the acquisition-related expenses bear the indicia of capital expenditures and are to be treated as such." *Id.* at 88–90.

These three cases hold that litigation expenses necessary to purchase a capital asset, construction expenses necessary to build a capital asset, and professional expenses necessary to facilitate the takeover of a capital asset are capital expenditures. Contrary to the government's position, these decisions do not require us to modify *Cleveland Allerton*.

Nor does the reasoning of these cases dictate that we change *Cleveland Allerton*. The government argues that these decisions establish three principles: (1) deductions "are exceptions to the norm of capitalization" and are "strictly construed," *INDOPCO*, 503 U.S. at 84; (2) "an expenditure incurred in acquiring capital assets must be capitalized even when the expenditure otherwise might be deemed deductible," *Idaho Power*, 418 U.S. at 17, and regardless of the taxpayer's motive for incurring the expense, *Woodward*, 397 U.S. at 576–77; and (3) tax parity is a "pertinent factor" in distinguishing deductions from capital expenditures, *Idaho Power*, 418 U.S. at 14. None of these principles squarely addresses the question presented today, and none requires that we modify *Cleveland Allerton*.

First, while deductions must be strictly construed, the government agrees that a lease termination expense, by itself, would be deductible. In other words, the expense already fits within a specifically enumerated deduction in the Tax Code, I.R.C. § 162(a). The question of *Cleveland Allerton*, in contrast, was whether this otherwise deductible expense nonetheless had

to be capitalized.  *INDOPCO*'s statement about construing the reach of a statutory deduction, therefore, does not require us to change our prior precedent.

Second, though otherwise deductible expenditures must be capitalized if they are incurred ancillary to acquiring a capital asset, the rule in *Idaho Power* does not prohibit a taxpayer from dividing an expense into capital and non-capital parts.  The government argues that expenditures are indivisible and that the capital portion controls the expenditure's tax treatment.  But *Idaho Power* actually suggests the opposite.  There, the Court required the taxpayer to divide its equipment expenditure into parts allocated to construction, which were to be capitalized, and parts allocated to operation and maintenance, which were to be deducted.  *See* 418 U.S. at 19. And while *Woodward* tells us that ancillary expenses incurred in acquiring a capital must be capitalized, *Cleveland Allerton* has already made clear that a lease termination payment is not an ancillary expense.  *See* 166 F.2d at 806, 807 (noting that the hotel made the payment "not for the real estate but to be relieved of an improvident rental obligation," and characterizing the payment as "liquidated damages for release from contract").  The cases raised by the government do not require us to revisit that conclusion.

Moreover, we disagree with the government that *Cleveland Allerton* relied on the taxpayer's motive in a manner later rejected by *Woodward*.  For one, it is not clear that *Woodward*'s "origin-of-the-claim" test applies outside the specific context of litigation expenses. *See Woodward*, 397 U.S. at 576–77.  For another, *Cleveland Allerton* did not actually rely on the hotel's motive to determine whether the expense should be capitalized.  Rather, in the context of explaining how the hotel differed from a third-party taxpayer, the court noted that the lease was a liability the hotel sought to extinguish, and the payment was more akin to liquidated damages for release from contract rather than a capital investment.  *Cleveland Allerton*, 166 F.2d at 806–07. *Woodward* and *Idaho Power*'s statements that otherwise deductible expense nonetheless must be capitalized do not require us to alter *Cleveland Allerton*.

Third, *Cleveland Allerton* did consider tax parity.  The court compared the hotel to a third-party purchaser, concluding that they were not alike.  166 F.2d at 806.  The government agrees with the comparison but disagrees with the conclusion.  In the government's view, because the hotel and third-party purchaser would pay the same price for the property and lease,

and the third-party purchaser would be required to capitalize the entire purchase price, the hotel should be required to capitalize the entire purchase price too. But though the hotel and third-party purchaser might pay the same price for the property and lease, they receive different benefits from their purchases, and that fact calls for different tax treatment. *See INDOPCO*, 503 U.S. at 87.

Here, for example, both ABC and a third-party purchaser would pay $2.75 million simply to purchase the property, and both would be required to capitalize that cost. ABC and the third-party purchaser both might also pay $6.25 million simply to purchase the lease. Buying the lease, however, would yield distinct benefits. For ABC, the lease is a *liability* it extinguishes with the purchase. The government has already conceded that a lease termination expense standing alone would be deductible. In other words, the benefits ABC gains from owning the property outright do not make the expense capital in nature. For the third-party purchaser, in contrast, the lease is a capital asset capable of producing future income, in the form of rent payments from a lessee. The parties agree that such an expense must be capitalized. We recognized this precise difference in *Cleveland Allerton*, realizing that it called for different tax treatment. *See* 166 F.2d at 806–07. The lessee-purchaser is different from the third-party purchaser because owning the property outright is different than owning both the property and a long-term lease on the property with the lease's attendant income stream. *Idaho Power*'s tax parity concern does not call for us to change *Cleveland Allerton*.

### C.        Section 167(c)(2)

Finally, I.R.C. § 167(c)(2) does not affect *Cleveland Allerton*. Section 167(c), entitled "Basis for depreciation," states as follows:

(1) In general

The basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 1011, for the purpose of determining the gain on the sale or other disposition of such property.

(2) Special rule for property subject to lease

If any property is acquired subject to a lease—

(A) no portion of the adjusted basis shall be allocated to the leasehold interest, and

(B) the entire adjusted basis shall be taken into account in determining the depreciation deduction (if any) with respect to the property subject to the lease.

In other words, "[i]f any property is acquired subject to a lease," § 167(c)(2) prohibits a taxpayer from allocating any part of the property's cost to the leasehold interest and requires the taxpayer to capitalize the entire cost of the property. *Id.* The statute was enacted after *Cleveland Allerton* and therefore would trump that case to the extent the two conflict. ABC does not appear to contest that, if it applies, the statute would require ABC to capitalize the lease termination expense.

To determine whether § 167(c)(2) applies here, this court first looks to the plain meaning of the statute's text. *United States v. Plavcak*, 411 F.3d 655, 660 (6th Cir. 2005). The district court found the text unambiguous, holding that "[i]f, upon acquisition, the property is not subject to a lease, the statute does not apply." In other words, according to the district court, the phrase "property is acquired subject to a lease" does not encompass a situation in which a lessee buys out the lease while acquiring the property, because the lease terminates upon acquisition. ABC agrees.

But the statute's text is ambiguous. The phrase "subject to a lease" might modify "acquired," as ABC argues, in which case the statute applies only if the purchased property remains subject to a lease after the purchase. The phrase might also modify "property," as the government argues, in which case the statute applies so long as the property is subject to a lease when acquired. (And even if the phrase modifies "acquired," the past participial phrase "acquired subject to a lease" still modifies "property." *See Union Carbide Foreign Sales Corp. v. Comm'r*, 115 T.C. 423, 429 (2000).) Indeed, the only other court in the country to have parsed § 167(c)(2) also found the language ambiguous. *See Union Carbide*, 115 T.C. at 429–30 ("[N]either party's grammar argument is obviously more correct than the other's. . . . [E]ither party's interpretation is possible, depending on the intent of Congress.").

The statute's legislative history is not much more enlightening. As the district court discussed, Congress enacted § 167(c)(2) in 1993 as part of a package of provisions aimed at the

treatment of intangibles under I.R.C. § 197.  *See* Omnibus Budget Reconciliation Act of 1991, P.L. 103-66, 107 Stat. 532.  Section 167 excludes leasehold interests from the effect of § 197. ABC argues that Congress intended § 167(c)(2) to exclude third-party purchases of property subject to a lease from taking advantage of § 197's changes in depreciation rules.  ABC further contends that because the Conference Report's only example involved a lease interest that continued after acquisition of the property, Congress did not intend § 167(c)(2) to apply to a lessee buying out a lease in order to acquire the asset.  The government, echoing the Tax Court in *Union Carbide*, responds that Congress did not intend this example to be all-inclusive and limit the statute's reach.  *See* 115 T.C. at 431.  The point of § 167(c)(2), it says, is to prevent taxpayers from allocating to a lease any part of the cost of acquiring tangible property.  ABC's and the government's arguments each have merit, but there is no clear winner.  At best, § 167(c)(2)'s legislative history "is not to the contrary" of ABC's arguments, as the district court held; but neither is it to the contrary of the government's arguments.  Ultimately, "[t]he legislative history provides no direct assistance or decisive indicator to answer our particular inquiry." *Id.* at 430.

Still, we think the phrase "acquired subject to a lease" is best understood to encompass only those acquisitions in which the lease continues after the purchase.  Absent other indication, "Congress intends to incorporate the well-settled meaning of the common-law terms it uses." *Neder v. United States*, 527 U.S. 1, 23 (1999).  The common law understood that property acquired "subject to" an encumbrance, such as a mortgage or right of occupancy, remained subject to the encumbrance after acquisition.  *See, e.g., Buttz v. N. Pac. R.R. Co.*, 119 U.S. 55, 66 (1886) (explaining that a grant of land from the United States to a railroad company was made "subject to" a continuing right of occupancy by Native American tribes); *see also United States v. Santa Fe Pac. R.R. Co.*, 314 U.S. 339, 347 (1941) ("If the right of occupancy of the Walapais was not extinguished . . . then the respondent's predecessor took the fee subject to the encumbrance of Indian title."); *Marsh v. Brooks*, 55 U.S. (14 How.) 513, 519 (1852); *Clark v. Smith*, 38 U.S. (13 Pet.) 195, 201 (1839).  Property would not be acquired "subject to" a mortgage, for example, if the purchase extinguished that mortgage.  *See Case v. Fant*, 53 F. 41, 43 (8th Cir. 1892) ("[T]he statement in the deed [transferring the property] that the premises are subject to the mortgage shows that it was the intention of the parties to the deed not to extinguish

the mortgage."). Likewise, absent other indication from Congress, property is not "acquired subject to a lease" if the purchase extinguishes the lease.

This conclusion leads us to disagree with the Tax Court's contrary holding in *Union Carbide*. That court reached the contrary result in part because the statute's plain language could encompass acquisitions by lessees and does not require the lease to continue after acquisition. 115 T.C. at 432. But as described above, the text's meaning is ambiguous. For these reasons, and for the more thorough explanation laid out in the district court's opinion, *see ABC Beverage Corp. & Subsidiaries v. United States*, 577 F. Supp. 2d 935, 944–46 (W.D. Mich. 2008), we disagree with *Union Carbide*. Because the lease terminated when ABC acquired the property, the property was not acquired subject to a lease, and § 167(c)(2) does not apply to bar ABC's deduction.

One more point informs our opinion. Courts, and typically the government, evaluate a transaction's tax consequences by considering its substance rather than its form. *See, e.g.*, *Gregory v. Helvering*, 293 U.S. 465, 469–70 (1935). We keep perspective even when it works to the government's disadvantage. *See Cleveland Allerton*, 166 F.2d at 807. The government concedes that ABC could deduct a lease termination payment if it first pays to terminate the lease and then purchases the property. But that concession and this transaction have the same substance: ultimately, ABC ends the lease and buys the property. We decline to elevate this transaction's form over its substance.

Because § 167(c)(2) does not prohibit ABC from deducting the lease expense at issue, and because no decision of the Supreme Court requires us to modify our prior decision, *Cleveland Allerton* remains in full effect, controls the outcome of this case, and permits ABC to deduct the lease expense.

### III. CONCLUSION

The district court's grant of summary judgment in favor of ABC is affirmed.