**PROVIDENCE JOURNAL CO. v. BRODERICK, Collector of Internal Revenue.**

No. 3429.

Circuit Court of Appeals, First Circuit.

June 13, 1939.

Harold B. Tanner, of Providence, R. I. (Tillinghast, Collins & Tanner, of Providence, R. I., on the brief), for appellant.

John R. Gage, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Lester L. Gibson, Sp. Assts. to Atty. Gen., and J. Howard McGrath, U. S. Atty., and George F. Troy, Asst. U. S. Atty., both of Providence, R. I., on the brief), for appellee.

Before WILSON, Circuit Judge, and PETERS and SWEENEY, District Judges.

PETERS, District Judge.

The Providence Journal Company, plaintiff, appellant, brought a suit against the defendant, appellee, as Collector of Internal Revenue, to recover some nine thousand dollars assessed as a deficiency in the plaintiff's income tax payment for the year 1933. The assessment resulted from the Commissioner's refusal to permit the plaintiff to take as a loss the undepreciated value of certain buildings it voluntarily demolished in 1933. Judgment for defendant was given in the District Court and the case is here on appeal from that judgment.

The question presented is whether the plaintiff, appellant, under the circumstances shown, was entitled to the deduction it claimed.

The applicable provisions of law are Section 23(f) of the Revenue Act of 1932, 26 U.S.C.A. § 23(f), and Article 172 of Regulations 77 promulgated under that Act.

There is little or no dispute about the facts, which, in the main, were stipulated. The District Court made certain other findings, clearly warranted by the evidence, and the plaintiff asks us to consider still other alleged facts, not included in the District Court's findings, which the plaintiff deems deducible from the evidence, and which we have considered in arriving at our conclusion.

It appears that the plaintiff, publisher of a newspaper in the City of Providence, deeming its facilities inadequate, in October, 1925, bought certain land with buildings thereon in that city with the avowed and recorded purpose of clearing the land of the buildings and erecting a new structure adapted to requirements of the business, as soon as certain leases on the property had expired.

The purpose that the officers and directors of the company had in mind in making the purchase is clearly shown by written evidence. The minutes of the Board of Directors, under date of October 8, 1925, contain the following entry:

"The future need of more ample space for our continued growth has long been recognized, and informally discussed at meetings of the directors. In line with this sentiment the president, after conference with the directors, purchased for the company the entire block with buildings thereon, bounded. * * *"

The action of the officers was approved on February 3, 1926, as shown by the vote of the Directors when express approval was voted, and a reserve of $100,000 was set up toward a new building. Additional reserves were set up from time to time, for the same purpose, up to and including 1931, and in May of that year the Treasurer of the Company made affidavit that,

"This real estate was obtained for the express purpose of clearing the land and erecting a new building at the expiration of the lease then in force, which had a period of 104 months to run."

In June, 1931, in a letter by the Company protesting additional assessments, it was stated in substance that when the property was purchased it was decided,

"To purchase the property but to postpone the erection of a new building until May 31, 1934, the date upon which the leases on the old buildings would expire."

Cancellation of the leases as a result of the business depression enabled the Company to begin demolition of the old buildings in May, 1933, somewhat earlier than anticipated.

The Company paid for the buildings and land $535,000. Of this purchase price the Company allocated $129,491 to the buildings. This sum was increased by improvements to $132,274, and, at the time of the demolition of the buildings to make room for the new structure, the undepreciated balance of the cost of the buildings was fairly represented by the $67,028 which the plaintiff company claimed was its actual loss sustained in 1933, "not compensated for by insurance or otherwise".

The property purchased, subject to certain leases, did not adjoin the newspaper plant operated by the company at the time of the purchase, but was several blocks removed therefrom.

The following findings are included among those made by the District Court [25 F.Supp. 940, 942]:

"(2) That the plaintiff, at the time of the purchase of the parcel of land known as the 'Fountain Street property', upon which were situated buildings varying in age from twenty to forty years, intended to demolish the said buildings, since the purchase was made for the primary purpose of erecting a new and modern home for itself upon obtaining possession of the property.

"(3) That the plaintiff carried out the purpose of the purchase and at the date of the demolition of the buildings the undepreciated value thereof was $67,028.91."

The court held that—

"It is the intention of the taxpayer which governs. At the time the plaintiff purchased the property demolition of the buildings was contemplated. It acquired the site with the definite intention of removing the buildings. The undepreciated value of the buildings destroyed became a part of the plaintiff's capital investment."

Article 172 of Regulations 77 is as follows:

"Art. 172. Voluntary Removal of Buildings.—Loss due to the voluntary re-

moval or demolition of old buildings, the scrapping of old machinery equipment, etc., incident to renewals and replacements will be deductible from gross income. When a taxpayer buys real estate upon which is located a building, which he proceeds to raze with a view to erecting thereon another building, it will be considered that the taxpayer has sustained no deductible loss by reason of the demolition of the old building, and no deductible expense on account of the cost of such removal, the value of the real estate, exclusive of old improvements, being presumably equal to the purchase price of the land and building plus the cost of removing the useless building."

The Statute, Section 23(f) provides that

"In computing net income there shall be allowed as deductions * * * losses sustained during the taxable year and not compensated for by insurance or otherwise."

■■ The plaintiff argues that the word "intention" does not appear in either the statute or in the Article above quoted. That is true, but a dispute arose from the plaintiff's claim that it sustained a loss. The loss claimed was in the destruction of buildings. A loss is "the unintentional parting with something of value". (Webster.) Whether the plaintiff parted with its buildings intentionally or otherwise is necessarily the most important factor in determining whether it really sustained a loss.

The intention at the time of the purchase fixes the nature of the transaction. The taxpayer here desired to buy a certain lot for the erection of a new building. To get the lot it was necessary to take the buildings on it. After the land had been cleared, at the commencement of the new construction which the taxpayer had in view from the beginning, the lot stood the taxpayer the cost of the land and buildings plus the cost of removing the then useless buildings. The presumption of the Regulation was an actuality. There is no conflict with the statute and no constitutional question involved.

The earnest contention of the plaintiff that it is not the intention of the taxpayer that governs the question of loss in such a case cannot be sustained. Nor is it in harmony with other decisions.

In interpreting this regulation the Circuit Court of Appeals in the Seventh Circuit, in the case of Union Bed & Spring Co. v. Commissioner, 39 F.2d 383, 385, uses the following language, with which we agree:

"We think the true test, in this and similar cases, is the intention of the taxpayer. If he intends, at the time of purchase, to demolish and rebuild, then the cost of so doing must be considered as part of capital investment, which is consistent with the statute and the regulation."

In Liberty Baking Co. v. Heiner, 37 F.2d 703, 704, the court in the Third Circuit says:

"The court in its findings and conclusions held that this item was not a deductible loss. The court found that the property, as it stood, was bought for the purpose of enlarging the plant. That there was no loss sustained because the demolition which was in contemplation at the time the property was bought. The court concluded that this situation was directly covered by article 142 of Regulation 45, to the effect that, when a taxpayer buys real estate upon which is located a building which he proceeds to raze in view of erecting another, it will be considered that the taxpayer has sustained no deductible loss by reason of the demolition of the old building, and no deductible expenses on account of the cost of removal; that the value of the real estate, exclusive of old improvements, is presumably equal to the purchase price of the land and building, plus the cost of removal of the old. While the razing of the buildings in this case was somewhat deferred, we think the conclusion of the court was correct." Louis Pizitz Dry Goods Co. v. Commissioner, 22 B.T.A. 161; Lansburg & Bro., Inc., v. Commissioner, 23 B.T.A. 66.

■ Counsel for plaintiff points to the value allocated to these buildings when purchased and says that the court must not look beyond the consideration involved in the purchase and the extinction of value when the buildings were demolished. But the value of the buildings when purchased and the fact that they were producing a fair return on the allocated value is immaterial. They were nevertheless useless when the taxpayer carried out its intention involving their destruction. The remaining undepreciated value of the buildings, when destroyed, became a part of the plaintiff's capital investment. Lansburgh & Bro., Inc., v. Commissioner, 23 B.T.A. 66.

The plaintiff in a supplemental memorandum calls attention to an alleged untenable position of the defendant, mention-

ed in its brief to the effect that the undepreciated balance of cost of the demolished buildings could be added to the cost of the new building and depreciated over its life. That, however, is not important in connection with this decision, which we have not based on any theory that the cost of the old buildings could be absorbed by depreciation of the new. Quite the contrary.

We conclude that the ruling of the District Court was correct, and the judgment must be affirmed with costs.

The judgment of the District Court is affirmed with costs.