Henry H. BENDER and Myrtle Bender, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. C 64–322.

United States District Court
N. D. Ohio, E. D.

Sept. 10, 1965.

John K. Lynch, Cleveland, Ohio, for plaintiffs.

Lawrence E. Doxsee, Justice Department, Tax Div., Washington, D. C., and Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, for defendant.

GREEN, District Judge:

This action was brought by plaintiffs, husband and wife, to recover $10,128.74 federal income taxes allegedly illegally and erroneously assessed and collected by the Commissioner of Internal Revenue for the years 1959, 1960 and 1961, with interest thereon. This action arises from the disallowance by the Commissioner of Internal Revenue of certain deductions which were claimed by the plain-

tiffs on their income tax returns for the said years. The deductions in question were based on costs of acquiring certain real estate and improvements which adjoined property which was under lease to the Kroger Company in Toledo, Ohio. Plaintiffs claimed that the purchase was made in order to obtain a renewal of an existing lease, which was about to expire.

Many of the facts pertinent to this action were stipulated by counsel. The facts herein as so stipulated and found by the Court, are as follows:

On September 28, 1949 the Benwell Corporation leased to the Kroger Company, a grocery chain, land identified as lots 149 through 153 in Knower's Addition in the City of Toledo, Ohio. The Benwell Corporation, in accordance with the terms of the lease, constructed a retail store on this land in which the Kroger Company carried on a grocery retail operation. The basic term of this lease was from February 1, 1950 through January 31, 1955, with two 5-year renewal terms.

In January of 1953 Henry H. Bender and William G. Bender, d.b.a. the Benwell Company, became the owners and lessors of the property leased to the Kroger Company, in place of the Benwell Corporation. Henry H. Bender had an 80% interest in the Benwell Company and William G. Bender had the remaining 20% interest in said company.

On August 1, 1955 the lease of the premises to the Kroger Company was renewed for a 5-year renewal term, to expire July 31, 1960.

In June, 1959, about one year before the existing lease was to expire, the Kroger Company advised the lessors, Henry H. Bender and William G. Bender, that the lease would not be renewed unless the lessors could acquire certain property adjacent to that under lease for an additional parking area. The Kroger Company also contacted a real estate broker with regard to investigating other locations in the same general area for a retail grocery store. At the time the Kroger Company was contemplating moving from the Knower Street location the general area was experiencing a condition of declining commercial activity.

Upon being advised by the Kroger Company's representatives of their intent to move unless they could obtain an additional parking area, the lessors retained a real estate broker to enter into negotiations for the acquisition of residential property adjacent to that leased by the Kroger Company, to be acquired for such use.

The broker, a qualified real estate appraiser, appraised three residential properties which were adjacent to the leased premises. The three properties were known as 663, 669 and 671 Knower Street, and further described as Lots 230 and 231 in Knower's Addition. The broker appraised them as follows:

| | Land | Buildings | Total |
|---|---|---|---|
| 671 Knower Street | $1,300.00 | $ 8,000.00 | $ 9,300.00 |
| 669 Knower Street | 1,300.00 | 16,200.00 | 17,500.00 |
| 663 Knower Street | 1,500.00 | 9,000.00 | 10,500.00 |
| Combined totals | 4,100.00 | 33,200.00 | 37,300.00 |

The broker discovered that the owners of these adjacent properties knew of the lessors' need to acquire them. He testified on this point:

A. Well, I contacted the owners, and I found out that the manager of the Kroger store had been rather talkative. These people were clients of the Kroger store —to what extent, I don't know —but they had full knowledge that Kroger was going to acquire additional parking area, and they also had full knowledge

that we could not go east because of this one particular party. So they felt that they were rather secure, in that we are going to pay their price.

\* \* \* \* \* \*

Q. Did all the owners know that the Kroger Company and Mr. Bender were interested in acquiring or using the lots for parking?

A. Yes, they were—which was very unfortunate.

Q. Did they all use this knowledge in their bargaining over the price?

A. I would think that they all did, yes. I'm quite sure that they did.

Q. Was that mentioned in your discussions with all of the owners?

A. Yes.

Following the said negotiations the lessors purchased lots 230 and 231 in Knower's Addition, with the three residences situated thereon. The purchases were consummated on or about November 9, 1959 as follows:

| | |
|---|---:|
| 671 Knower Street | $30,946.52 |
| 669 Knower Street | 27,859.98 |
| 663 Knower Street | 15,845.05 |
| Closing costs | 485.00 |
| Total | $75,136.55 |

In addition to the above amounts, the lessors paid a real estate commission of $3,620.00 and a legal fee of $75.00 in conjunction with the said purchases.

Thereafter, the lessors razed the residences located on lots 230 and 231 at a cost of $1,790.00.

On September 22, 1959, the lease between the lessors and the Kroger Company was amended to include cleared land consisting of the parcels in question, although the purchases had not then been consummated, and to provide a basic lease term of January 1, 1960 through December 1, 1969, with three 5-year renewal terms.

The evidence indicated that the said lease renewal would not have been entered into by the Kroger Company if the lessors had not acquired lots 230 and 231 for use as additional parking facilities. The renewed lease provided for an increased rental, which over the ten-year period would amount to $74,400.00, virtually the amount of the lessors' cost of acquiring the additional parking area.

The Court finds that the great disparity between the appraised values and the purchase prices paid resulted from the adjacent land owners' knowledge of the necessity of the lessors acquiring the said lots in order to preserve their lease with the Kroger Company.

The plaintiffs, for income tax purposes, considered the cost of acquiring the buildings, $71,036.55 ($75,136.55, minus $4,100.00 for the land) plus the cost of razing, $1,790.00, for a total of $72,826.55, as being chargeable against the acquisition of the renewed lease, to be amortized over a period of 124 months.

The plaintiffs herein deducted their percentage share of the amortized expenses, as set forth above, for the years 1959, 1960 and 1961. In addition, for the year 1959 the real estate commission in the amount of $3,620.00 and the legal fees of $75.00 were deducted as expenses by the lessors, with the plaintiffs claiming their percentages as deductions for 1959.

The Internal Revenue Service disallowed as deductions for amortized leasehold expenses the amounts claimed by plaintiffs for the three years, along with the sale expenses deducted for 1959, and assessed income tax deficiencies in the following amounts:

| | |
|---|---:|
| 1959 | $1,755.94 |
| 1960 | 3,396.36 |
| 1961 | 4,976.44 |

The plaintiffs paid the amounts assessed, with interest, filed timely claims for refund, and thereafter brought this action to recover the same.

It is plaintiffs' contention that the costs of acquiring and razing the buildings on lots 230 and 231, Knower's Addition, were incurred solely for the purpose

of obtaining a renewal of the existing lease with the Kroger Company, thus qualifying for a deduction under Sections 162 and 212, and a depreciation of the deduction under Section 167, Internal Revenue Code of 1954.

The code sections upon which plaintiffs rely are, in pertinent part, as follows:

> 26 U.S.C. Sec. 162—*Trade or Business Expenses*
>
> (A) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
>
> \* \* \* \* \* \*
>
> (3) Rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. \* \* \*
>
> \* \* \* \* \* \*
>
> 26 U.S.C. Sec. 212 *Expenses for Production of Income*
>
> In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
>
> (1) for the production or collection of income;
>
> (2) for the management, conservation, or maintenance of property held for the production of income;
> \* \* \*
>
> \* \* \* \* \* \*
>
> 26 U.S.C.A. Sec. 167 *Depreciation*
>
> (a) General Rule.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
>
> (1) of property used in the trade or business, or
>
> (2) of property held for the production of income.

Defendant contends that costs attributable to buildings purchased with the intent of razing the same should not be amortized over the life of the lease, but should be allocated to the land instead, relying on Treasury Regulations on Income Tax (1954 Code) 1.165–3, 26 C.F.R., Sec. 1.165–3, promulgated under 26 U.S.C. § 165.

Before considering the merits of the legal issues presented, there is one factual controversy that must be resolved.

■ Defendant suggests that the lessors' purchase of lots 230 and 231 was not solely for the purpose of protecting the Kroger lease, in that it was generally beneficial to the lessors to acquire the said property. While it is likely true that the additional adjacent space enhanced the value of the land already owned by the lessors, there is no evidence that they would have purchased lots 230 and 231 if the Kroger Company had not threatened to vacate, and no evidence was introduced to show any increase in value to the originally leased property by reason of the purchase of the adjacent parcels. The Court, therefore, finds that the purchase of lots 230 and 231 by the lessors was for the purpose of securing the lease renewal from the Kroger Company.

The question for determination in this case appears to be as follows: May a lessor of real property who, in order to preserve an existing lease and secure a renewal thereof, purchases adjacent improved real property, with the intent to demolish the buildings thereon in order to make the acquired property suitable for the lessee's use, amortize his expenditures over and above the appraised fair market value of the raw land, as an expense incurred for the production or collection of income or for the management, conservation or maintenance of property held for the production of income.

Briefs of counsel and independent research have not disclosed any cases on this precise question.

Defendant contends that Regulation 1.165–3 requires a negative answer to this proposition. That regulation, in pertinent part, provides:

Sec. 1.165–3 *Demolition of Buildings*

(a) Intent to demolish formed at time of purchase.

(1) * * * the following rule shall apply when, in the course of a trade or business or in a transaction entered into for profit, real property is purchased with the intention of demolishing either immediately or subsequently the buildings situated thereon:

No deduction shall be allowed under section 165(a) on account of the demolition * * * The entire basis of the property so purchased shall, notwithstanding the provisions of § 1.167 (a)–(5), be allocated to the land only. Such basis shall be increased by the net cost of demolition or decreased by the net proceeds from demolition.

\* \* \* \* \* \*

(b) *Intent to demolish formed subsequent to acquisition.*

(1) Except as provided in subparagraph (2) of this paragraph, the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished * * *

(2) If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a part of the lease to be amortized over the term thereof.[1]

■ The flaw in defendant's position is that the subject regulation was promulgated under, and pertains to, section 165 of the Internal Revenue Code of 1954, 26 U.S.C. § 165, which relates to the deduction of losses.[2] That is not the point in issue here. Plaintiffs are not attempting to deduct the loss in full for the year 1959, but rather are attempting to amortize the expenditure over the term of the lease. Consequently, the Court is of the opinion that the regulation does not control herein.

Defendant argues that the regulation should be applied against the claimed deductions under 26 U.S.C. § 167, in that it is the only regulation in Part VI of Subchapter B of the Internal Revenue Code which deals with "Demolition of Buildings." In support of this argument counsel further contends that the regulation promulgated under Section 165 makes both explicit and implied reference to Section 167 which section deals with deductions for depreciation.

1. While a cursory reading of the regulation might indicate that plaintiffs' position is sustained by subsection (b) (2) thereof, defendant argues, and the Court believes, that the subsection must be read as a qualification to subsection (b) (1), which applies only where the intent to demolish is not present at the time of acquisition. On the facts of this action, the intent to demolish did exist at the time of acquisition. Hence, subsection (b) of the regulation could not apply herein.

2. 26 U.S.C. Sec. 165 *Losses*
(a) General Rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

The Court does not believe that a tax regulation dealing with the subject of "demolition of buildings," is applicable in every instance where "demolition of buildings" is involved, regardless of whether the claimed deduction which is the specific subject of the regulation is at issue. We are here concerned with a claim of the right to depreciate an alleged business expense over a period of years, whereas the regulation under Section 165 covers claims of a loss in a single year for the same or similar type of expense. It is the Court's opinion that the absence of a controlling regulation does not justify the application of an existing one dealing with a different type of deduction.

As to the cross-references in Regulation 1.165–3 to Section 167, in the Court's opinion they do not support defendant's arguments, nor are they reflective of an intent that the said regulation have application to claims of a right to a depreciation deduction under Section 167.

The express reference in Regulation 1.165–3 to Section 167 is set forth in subsection (a) (1) of the said regulation as follows:

* * * The entire basis of the property so purchased shall, notwithstanding the provisions of § 1.167(a)–5, be allocated to the land only * * *

The defendant in its brief contends that from this reference,

* * * it would appear that when property is bought with the intention formed at the time of purchase to raze the buildings thereon, the entire basis of the property so purchased must be allocated to the land only. Since land is non-depreciable, then no deduction of any kind would be allowable at any time for any part of the purchase price.

This Court has considered the pertinent regulations adopted under both Sections 165 and 167, and is of the belief that the scope ascribed to regulation 1.165–3 by the Government is not reflected therein. In the Court's opinion, the specific cross-reference here under consideration is to make clear that no loss in full during a single year can be claimed under Section 165 under the circumstances described in the said regulation, whereas the regulation promulgated under Section 167 alone might have left the right to claim such a deduction under Section 165 subject to question.

The implied reference to Section 167 upon which defendant relies in support of its argument that Sections 165 and 167 are interrelated is found in subsection (b) (2) of Regulation 1.165–3, previously set forth herein, which provides that the allowable deduction for demolition of buildings pursuant to a lease agreement is to be in the form of amortization of the expenses incurred over the term of the lease.

In the Court's opinion, subsection (b) (2) of Regulation 1.165–3 does not rule out the propriety of a claim for depreciation over the term of a lease where the intent to demolish existed at the time the property was purchased. Subsection (b) (2) is predicated on the supposition that the intent to demolish the building arose after acquisition of the property. The said subsection is a part of an entire regulation adopted under the Internal Revenue Code section dealing with the right to claim a loss in full in the year of the alleged loss and is significant only in the respect that it supports plaintiffs' contention that costs of demolition may, under given circumstances, be chargeable against the acquisition of a lease.

There is a well established rule that is the focal point of this controversy—expenses incurred by a lessor in securing a long-term lease are properly amortized over the term of the lease. Wolan v. Commissioner, 184 F.2d 101 (CA10, 1950); Spinks Realty Co. v. Burnet, 61 App.D.C. 321, 62 F.2d 860 (1932); Harry Latter v. Commissioner, 20 T.C.M. 336 (1961). The theory behind allowing such a deduction was set forth in Cosmopolitan Corp. v. Commissioner, 18 T.C.M. 542 (1959) wherein it was stated:

Where, as here, however, the leases are being terminated in order either

to erect a new structure or to obtain a new long term lease extending substantially beyond the old tenancy, the landlord has acquired a new asset which he did not previously possess. With respect to it, the cost of eliminating the old lease, like the loss on demolition of old structures * * or the expense of building material, or any other factor contributing to the new asset, * * * is a capital expenditure to be amortized over the life of the newly acquired property.

The real point in issue herein is whether the deductions claimed by plaintiffs come within this rule. It is the Court's opinion that they do.

At the time that the lessors purchased lots 230 and 231, and demolished the buildings thereon, they were faced with the threatened loss of an existing tenant. The general economic condition of realty in the area was declining, and the lessors would be left with a vacant property. In order to retain their tenant, and acquire a new long-term lease, the lessors bought, at a premium, land which they otherwise would not have acquired, and altered it to the use required by the lessee. The Court believes that in so doing, the lessors were making an investment over and above the value of the land which was attributable to the retention and production of their business income, and that they are entitled to a proper deduction therefor for income tax purposes.

The only case cited by counsel which bears on the issue here under consideration is the ruling in Camp Wolters Land Co. v. Commissioner, 160 F.2d 84 (CA5, 1947).

In that case, the City of Mineral Wells, Texas had leased certain lands from the owners thereof, and had sub-leased the lands to the United States for use as an Army camp. When it was determined that the United States needed additional lands, the City was without funds to acquire them. The plaintiff corporation therein was formed by private citizens to purchase the added property, which was to be leased to the City and subleased to the United States. It was then determined that certain improvements on lands neither owned nor leased by the City or the corporation would have to be purchased and destroyed, in order that the large tract be suitable for the use of the United States. The corporation bought the improvements and had the same demolished and removed at a loss to it. It was necessary to purchase and remove the buildings in order to secure the United States as a tenant and to realize on the lease.

The taxpayer claimed a loss for income tax purposes, which was disallowed by the Commissioner of Internal Revenue. The action of the Commissioner was sustained by the Tax Court.

On appeal from the decision of the Tax Court, the Fifth Circuit Court of Appeals held:

That the loss of $6,650.00 occasioned by the purchase, demolition, and removal of the improvements on the Deakins, Maddox, and Sullivan tracts [were] an expense incident to securing the lease and obtaining a tenant that should be amortizable over the life of the lease * * *. 160 F.2d 84, 88.

Defendant herein distinguishes the Camp Wolters case on the ground that no land was purchased therein. The defendant states in its brief:

Because the Camp Wolters Company did not purchase the land, the case is substantially different from the case under consideration here. Here, the costs were allocable to the land; in the Camp Wolters situation, there was no land to which the cost could be applied.

This argument is reflective of the general theory upon which the defendant has proceeded in this case—when a taxpayer purchases real property, improved or unimproved, that is intended to be used as unimproved land, the entire purchase price must be allocated to the basis of the land and no part thereof may be allocated to a wasting asset.

A similar contention by the Commissioner has been rejected in the case of Millinery Center Building Corp. v. Commisioner, 350 U.S. 456, 76 S.Ct. 493, 100 L.Ed. 545 (1956). Therein, the taxpayer leased certain real property, on which it had constructed a commercial building. Although the taxpayer held legal title to the building during the term of the lease, it was to revert to the lessor upon the expiration of the lease, at the lessor's option. The Supreme Court stated that the taxpayer's claim that it "owned" the building was based on a loose and misleading use of "owned", id. p. 459, 76 S.Ct. 493. The taxpayer purchased the fee title to the land it leased, for the sum of $2,100,000. At the time of purchase the value of the raw land was $660,000. The taxpayer attempted to claim a deduction for the $1,440,000 difference between the purchase price and land value.

The Commissioner ruled that the entire purchase price must be allocated to the land, and his position was sustained in the Tax Court, 21 T.C. 817 (1954). The Court of Appeals reversed the Tax Court, 221 F.2d 322 (CA2, 1955), holding that the purchase price could be divided between land and an interest in the improvements thereon, to be amortized over the useful life of the building. An appeal was taken by the taxpayer to the Supreme Court, 350 U.S. 820, 76 S.Ct. 79, 100 L.Ed. 733 (1955). The Commissioner did not appeal the ruling of the Court of Appeals. Therefore, the correctness of the decision permitting the allocation between land and a depreciable wasting asset was not strictly before the Supreme Court. The opinion of the Supreme Court clearly indicates, however, that it believed the ruling below to be correct, and affirmed the same on the questions presented.

Similar to the circumstances of the Millinery Center Building case is the decision in World Publishing Co. v. Commissioner, 299 F.2d 614 (CA8, 1962). There again, the contention of the Commissioner that a purchase of land cannot result in an allocation between a capital asset and a wasting asset was rejected.

The taxpayer purchased a piece of land, which was subject to a lease to a third person, for $700,000. The lessee had constructed a building thereon, which by the terms of the lease became a part of the realty and reverted to the lessor at the expiration of the lease. The appraised value of the land was $400,000. The taxpayer sought to amortize the $300,000 difference over the term of the lease, while the Commissioner contended that the $700,000 should be allocated to the land basis.

The Court of Appeals held that the taxpayer had acquired both a capital asset and a wasting asset, and sustained the taxpayer's position.

It is the Court's opinion that the philosophy of the foregoing cases is applicable herein. For their expenditure of over $70,000 the lessors acquired a capital asset, land, with an appraised value of $4,100.00, as testified by plaintiffs' expert. The balance of the expenditure was motivated by, and attributable to, the securing of the new lease from the Kroger Company. It therefore follows that such excess investment should be chargeable against the lease, under 26 U.S.C. § 167, as a wasting asset.

At the trial the Court inquired whether the defendant would offer evidence of other appraisers as to the value of the land. Counsel for defendant stated that the Government would introduce no expert evidence with its own expert appraiser on values. The defendant did not rebut the evidence as to the appraisal value of the land offered by plaintiffs. Therefore, the Court is bound to accept the evidence as reflected in the record, for as was said in World Publishing Co. v. Commissioner, supra, at p. 623:

> The Commissioner had his opportunity in the proceedings which have already taken place * * * to controvert the taxpayer's evidence. This he did not do but chose, instead, to rely on his basic thesis that

the taxpayer had no investment which was entitled to depreciation.

It is the Court's conclusion that plaintiffs are entitled to the deductions for amortization in the amounts as claimed for the years 1959, 1960 and 1961.

As to the real estate commissions and legal fees deducted in full for the year 1959, those items are also chargeable against the lease and should be amortized over the term thereof. Spinks Realty Co. v. Burnet, 61 App.D.C. 321, 62 F.2d 860 (1932); Renwick v. United States, 7 Cir., 87 F.2d 123 (1937). The deficiencies assessed against plaintiffs are, therefore, subject to recomputation based on such amounts.

Decision is entered in favor of plaintiffs in accordance with the terms of this memorandum opinion, which is adopted as Findings of Fact and Conclusions of Law, pursuant to Rule 52, Federal Rules of Civil Procedure. Counsel for the respective parties shall confer on the amount of verdict to be entered in favor of plaintiffs herein, with interest as prayed for, and submit such figure to the Court for rendition of a final judgment.

