**Albert C. MEYER and Eleanor M. Meyer**

v.

**The UNITED STATES of America.**

**Civ. A. No. 65–321.**

United States District Court
D. Massachusetts.

Dec. 2, 1965.

Lyman T. Burgess, Springfield, Mass., for plaintiff.

Steven Shapiro, Dept. of Justice, Washington, D. C., David A. Wilson, Jr., Dept. of Justice, Washington, D. C., W. Arthur Garrity, Jr., U. S. Atty., Boston, Mass., for defendant.

WYZANSKI, Chief Judge.

Plaintiffs, being husband and wife, bring this action for refund of federal income taxes paid by them on their joint returns for the three years 1959, 1960, and 1961. With respect to each year the same question is raised: whether the husband, as landlord, had a right to deduct from income received by him from each of several leases a sum representing amortization during the life of that lease of such part of the total price he paid for the parcel as is allocated to the building which stood there at the time of the purchase and which was subsequently demolished to meet the terms of the lease. At the time he made the purchase of each parcel the husband had negotiated with the prospective lessee a complete verbal understanding, including the proposed demolition, and thus the husband, conditional upon the execution of the lease, had at the time of purchase the conditional intention to demolish the building.

The Taxpayer's claim of a right to amortize the cost of the demolished building is denied by the Government on the ground that the whole purchase price must be allocated to the land, the purchaser-landlord-taxpayer having had at the time of the purchase a virtually absolute intention to demolish the building.

The applicable statutory provisions are set forth in §§ 165 and 167 of the Internal Revenue Code of 1954 (26 U.S.C. §§ 165 and 167):

SEC. 165. LOSSES.

(a) *General Rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

(b) *Amount of Deduction.*—For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

(c) *Limitation on Losses of Individuals.*—In the case of an individual, the deduction under subsection (a) shall be limited to—

(1) losses incurred in a trade or business;

(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * *

* * * * * *

## SEC. 167. DEPRECIATION.

(a) *General Rule.*—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business, or

(2) of property held for the production of income.

The relevant Treasury regulation is set forth in § 1.165–3 (26 C.F.R. § 1.165–3):

SEC. 1.165–3. *Demolition of buildings.*

(a) *Intent to demolish formed at time of purchase.* (1) Except as provided in subparagraph (2) of this paragraph, the following rule shall apply when, in the course of a trade or business or in a transaction entered into for profit, real property is purchased with the intention of demolishing either immediately or subsequently the buildings situated thereon: No deduction shall be allowed under section 165(a) on account of the demolition of the old buildings even though any demolition originally planned is subsequently deferred or abandoned. The entire basis of the property so purchased shall, notwithstanding the provisions of Sec. 1.167(a)–5, be allocated to the land only. Such basis shall be increased by the net cost of demolition or decreased by the net proceeds from demolition.

(2) (i) if the property is purchased with the intention of demolishing the buildings and the buildings are used in a trade or business or held for the production of income before their demolition, a portion of the basis of the property may be allocated to such buildings and depreciated over the period during which they are so used or held. The fact that the taxpayer intends to demolish the buildings shall be taken into account in making the apportionment of basis between the land and buildings under Sec. 1.167(a)–5. In any event, the portion of the purchase price which may be allocated to the buildings shall not exceed the present value of the right to receive rentals from the buildings over the period of their intended use. The present value of such right shall be determined at the time that the buildings are first used in the trade or business or first held for the production of income. If the taxpayer does not rent the buildings, but uses them in his own trade or business or in the production of his income, the present value of such right shall be determined by reference to the rentals which could be realized during such period of intended use. The fact that the taxpayer intends to rent or use the buildings for a limited period before their demolition shall also be taken into account in computing the useful life in accordance with paragraph (b) of Sec. 1.167(a)–1.

(ii) Any portion of the purchase price which is allocated to the buildings in accordance with this subparagraph shall not be included in the basis of the land computed under subparagraph (1) of this paragraph, and any portion of the basis of the buildings which has not been recovered through depreciation or otherwise at the time of the demolition of the buildings is allowable as a deduction under section 165.

\* \* \* \* \* \*

(b) *Intent to demolish formed subsequent to the time of acquisition.* (1) Except as provided in subparagraph (2) of this paragraph, the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165(a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. The amount of the loss shall be the adjusted basis of the buildings demolished increased by the net cost of demolition or decreased by the net proceeds from demolition. See paragraph (c) of Sec. 1.165–1 relating to amount deductible under section 165. The basis of any building acquired in replacement of the old buildings shall not include any part of the basis of the property demolished.

(2) If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a part of the cost of the lease to be amortized over the term thereof.

The foregoing regulation is the lineal descendant of the following Treasury regulation, in effect in 1918 when it was known as Article 142 (see Treasury Regulations, 1919 edition, page 45.)

Art. 142. *Voluntary removal of buildings.—* \* \* \*

When a taxpayer buys real estate upon which is located a building which he proceeds to raze with a view to erecting thereon another building, it will be considered that the taxpayer has sustained no deductible loss by reason of the demolition of the old building, and no deductible expense on account of the cost of such removal, the value of the real estate, exclusive of old improvements, being presumably equal to the purchase price of the land and building plus the cost of removing the useless building.

There is no substantial dispute as to the underlying facts revealed by answers to interrogatories, by a deposition, and by the testimony in open court given by Albert C. Meyer, the husband taxpayer.

In the three years in question, five parcels of land were involved: (1) 732–736 State Street, Springfield, Massachusetts, purchased by the husband taxpayer on March 1, 1954, the building being demolished May, 1954; (2) 232 Park Street, West Springfield, Massachusetts, purchased by him on May 4, 1955, the building being demolished October, 1955; (3) 221 Washington Street, Gloucester, Massachusetts, purchased by him on January 2, 1959, the building being demolished March, 1959; (4) 12 Harris Street, Newburyport, Massachusetts, purchased by him on July 15, 1958, the building being demolished September 1958; (5) 250 Elm Street, Biddeford, Maine, purchased by him on September 1, 1955, the building being demolished November, 1955.

The building on the first of these five parcels was being used as a funeral home, just prior to the purchase; the building on each of the other four premises was being used as a private residence just prior to the purchase. In each instance the taxpayer has made an allocation of the purchase price between land and building in accordance with the percentage ascribed by local municipal assessors to the value of the land and to the value of the building. Detailed computations are in the record.

The husband purchased each of the properties in the course of his trade or

business in a transaction entered into for profit. In each case, he had already negotiated prior to the purchase of the property a detailed but unwritten lease with a specific prospective tenant. In the case of the first property the prospective tenants were National Cash Register and Remington Rand, which were to lease for fifteen years with an option to renew for five years; in the case of the four other properties, the prospective tenant was Metropolitan Life Insurance Company, which was, in each case, to lease for ten years with renewal options for five years. Each lease contemplated the immediate demolition of the old building and the erection of a new building.

On the stand, Mr. Meyer stated that if, for some reason, the expected lease were not reduced to writing and executed, then it would be his intention, depending on the circumstances, either to let the existing building remain on the premises or, if there were available another tenant who wished the building demolished and a new structure erected, to make a lease on that basis to such tenant.

■ While the evidence does not include a specific admission by Mr. Meyer to this effect, the Court, having taken into account Mr. Meyer's experience, his success as a businessman, and his capacity in his calling, infers that, in each of the five instances here involved, the overwhelming likelihood was that at the time Mr. Meyer acquired the property the prospective lessee would indeed execute the already negotiated lease. The Court, therefore, finds that Mr. Meyer's intention at the time he acquired the premises was a virtually absolute intention to demolish the building. The words "virtually absolute" recognize, of course, that there was a remote possibility that the lease would not be executed and that under those circumstances Mr. Meyer's intention would be to leave the building standing at least until such time as there would be available another tenant who wanted it demolished.

The prospective tenants, National Cash Register, Remington Rand, and Metropolitan Life Insurance Company did in fact enter into the very leases which Mr. Meyer contemplated at the time he acquired the premises. As already noted, the buildings were demolished almost immediately after the purchase.

In their original returns filed for the years 1959, 1960, and 1961, the taxpayers did not seek to amortize the cost basis of the buildings which had been standing on the premises when they were acquired and which were subsequently demolished. It is now, however, their position that they were entitled to amortize the cost basis of those buildings over the terms of the leases which, as landlord, Mr. Meyer made of the five aforesaid premises. The specific amounts sought in each year are set forth in the refund claims filed by the taxpayers.

The Internal Revenue Service denied the refund claims on the ground that the purchase prices paid for the properties must be allocated solely to the land.

■ Upon the basis of the foregoing facts, the Court concludes as a matter of law that the taxpayers are not entitled to the refunds they seek, and that judgment must be entered for the Government.

■ The regulations heretofore quoted are consistent with the statute and foreclose the claims asserted. The regulations, being based upon a series of prior regulations now almost half a century old, have in effect been approved by the silence of Congress. Moreover, the overwhelming weight of judicial authority supports the proposition that where a taxpayer purchases property with the intention of demolishing either immediately or subsequently the buildings thereon, the cost basis of the property so purchased shall be allocated to the land only. Providence Journal Co. v. Broderick, (1st Cir.) 104 F.2d 614; Liberty Baking Co. v. Heiner, (3rd Cir.) 37 F.2d 703; Montgomery Co. v. C. I. R.,

944

(6th Cir.) 330 F.2d 950; Lynchburg National Bank & Trust Co. v. Commissioner of Internal Revenue, 20 T.C. 670, affirmed on another issue, 4 Cir., 208 F.2d 757; N. W. Ayer & Son, Inc. v. Commissioner of Internal Revenue, 17 T.C. 631; Hillside National Bank v. Commissioner of Internal Revenue, 35 T.C. 879; Super Markets, Inc. v. United States (N.D.N.Y.) 194 F.Supp. 291; Bank of Millvale v. U. S., (W.D.Pa.), decided November 13, 1961 (1962-1 U.S. T.C. 9174); Panhandle State Bank v. Commissioner of Internal Revenue, 39 T.C. 813, 817.

Bender v. United States (N.D.Ohio) 246 F.Supp. 189, if to the contrary, seems an unsound precedent. Camp Wolters Land Co. v. Commissioner, (5th Cir.) 160 F.2d 84 obviously has no relevance, as there the taxpayers purchased the structures, not the land.

The only interesting point which might be thought to distinguish the present case from the long line of authorities cited in the penultimate paragraph is that here the taxpayer explicitly testified that he would not have demolished the building on each of the premises he acquired if the verbal lease were not ultimately executed and if no similar tenant were available. Such testimony indicates that the taxpayer did not have an absolute intent, no matter what circumstances should develop. Nonetheless, his qualified intention was subject to such a remote condition that for practical purposes it ought to be disregarded. As used in Treasury Regulations § 1.165-3, the phrase "with the intention of demolishing either immediately or subsequently the buildings situated thereon" should be interpreted as though it read "with the *dominant* intention." Rarely does a man have an intention which he is not prepared to yield to circumstances. What a draftsman of regulations implies when he uses word "intention" is an intention or purpose to be followed under circumstances which are foreseen as more probable than not.

Complaint dismissed on the merits. Judgment for the defendant.