Henry H. BENDER and Myrtle Bender, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 17206.

United States Court of Appeals Sixth Circuit.

Sept. 28, 1967.

Robert J. Campbell, Atty., Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Loring Post, Attys., Dept. of Justice, Washington, D. C., on the brief; Merle M. McCurdy, U. S. Atty., Bernard J. Stuplinski, Asst. U. S. Atty., Cleveland, Ohio, of counsel), for appellant.

John Kennedy Lynch, Cleveland, Ohio for appellee.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and CECIL, Senior Circuit Judge.

EDWARDS, Circuit Judge.

This is an appeal by the United States of America from a District Court judgment in favor of the plaintiffs for a refund of taxes and deficiency interest paid under protest in 1959, 1960, and 1961 in the sum of $7,425.77.

The taxpayer-plaintiffs in this case owned an 80% interest in five lots in Toledo, Ohio, which had been leased to the Kroger Company for a grocery operation. When the time approached for renewal, Kroger notified the lessors that additional parking was essential for renewal of the lease. Thereupon the lessors negotiated through a real estate broker for the purchase of two adjacent lots on which three houses were located. The sellers knew of Kroger's need for additional parking and the purchase prices ultimately paid were substantially in excess of the values of the lots and buildings as appraised by the plaintiffs' realtor. The comparison of appraisals to purchase prices is shown below:

|  | APPRAISAL PRICES | | | PURCHASE PRICES |
|---|---|---|---|---|
|  | LAND | BUILDINGS | TOTAL |  |
| 671 Knower St. | $1,300.00 | $ 8,000.00 | $ 9,300.00 | $30,946.52 |
| 669 Knower St. | 1,300.00 | 16,200.00 | 17,500.00 | 27,859.98 |
| 663 Knower St. | 1,500.00 | 9,000.00 | 10,500.00 | 15,845.05 |
| Closing costs |  |  |  | 485.00 |
| TOTAL | $4,100.00 | $33,200.00 | $37,300.00 | $75,136.55 |

In addition to the above amounts, the lessors paid a real estate commission of $3,620 and a legal fee of $75 in conjunction with the said purchases.

Thereafter, the lessors razed the residences located on lots 230 and 231 at a cost of $1,790.

The Kroger Company renewed the lease on terms which compensated lessors for the costs of acquisition of the parking lot property.

The taxpayers sought to amortize their share (80%) of their expenditures above the $4,100 appraised value of the land involved over the term of the lease in their tax returns for 1959, 1960 and 1961. Their basic claim was that the expenditures for the buildings and their demolition (a sum of $80,621.55) [1] should be regarded as expenses incurred for the production of income under section 212 of the Internal Revenue Code, or as ordinary business expense under section 162 of the Code.

The Internal Revenue Service disallowed the claimed deductions on the ground that these expenditures were capital expenditures which had to be allocated solely to the land. The taxpayers paid the amounts assessed and sued in the United States District Court for refund of approximately $7,500 for taxes and deficiency interest paid.

The District Judge heard the case on the stipulated facts which we have recited. He found:

"[T]he great disparity between the appraised values and the purchase prices paid resulted from the adjacent land owners' knowledge of the necessity of the lessors acquiring the said lots in order to preserve their lease with the Kroger Company." Bender v. United States, 246 F.Supp. 189, 192 (N.D.Ohio 1965).

\* \* \* \* \* \*

"[T]he purchase of lots 230 and 231 by the lessors was for the purpose of securing the lease renewal from the Kroger Company." Bender v. United States, supra at 193.

He stated the question posed by this case as follows:

"May a lessor of real property who, in order to preserve an existing lease and secure a renewal thereof, purchases

[1]. Included in this figure were a real estate commission in the amount of $3,620 and legal fees of $75 incurred in connection with the purchase of the property, 80% of which the lessor-taxpayers sought to deduct as business expense in 1959.

adjacent improved real property, with the intent to demolish the buildings thereon in order to make the acquired property suitable for the lessee's use, amortize his expenditures over and above the appraised fair market value of the raw land, as an expense incurred for the production or collection of income or for the management, conservation or maintenance of property held for the production of income." Bender v. United States, supra at 193.

The District Judge answered this question in favor of the taxpayers. He appears to have relied primarily upon 26 U.S.C. § 167 which says:

"Sec. 167. *Depreciation.*

"(a) General Rule.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income. * * *"

26 U.S.C. § 167 (1958).

Citing and relying on Camp Wolters Land Co. v. Commissioner of Internal Revenue, 160 F.2d 84 (C.A. 5, 1947); Millinery Center Building Corp. v. Commissioner of Internal Revenue, 350 U.S. 456, 76 S.Ct. 493, 100 L.Ed. 545 (1956); and World Publishing Co. v. Commissioner of Internal Revenue, 299 F.2d 614 (C.A. 8, 1962),[2] the District Judge's opinion said:

"It is the Court's opinion that the philosophy of the foregoing cases is applicable herein. For their expenditure of over $70,000 the lessors acquired a capital asset, land, with an appraised value of $4,100.00, as testified by plaintiffs' expert. The balance of the expenditure was motivated by, and attributable to, the securing of the new lease from the Kroger Company. It

therefore follows that such excess investment should be chargeable against the lease, under 26 U.S.C. § 167, as a wasting asset." Bender v. United States, 246 F.Supp. 189, 197 (N.D. Ohio 1965).

We are unable to agree with this conclusion. Here it appears clear that the lessor-taxpayers were seeking to clear and join together two plots previously used for three residences in order to convert them to a commercial use for parking in conjunction with their store property. The intention to demolish the dwellings existed at the time of acquisition as the District Judge noted.

■ Land, of course, is a nondepreciable asset. The cost of land alone cannot be depreciated over the life of a lease. Treas.Reg § 1.167(a)-2 (1956); Hoboken Land & Improvement Co. v. Commissioner of Internal Revenue, 138 F.2d 104, 106 & n. 2 (C.A. 3, 1943); 4 J. MERTENS, THE LAW OF FEDERAL INCOME TAXATION §§ 23.09, 23.12 (1966 rev.).

■ There is also a well-established rule that the total cost of realty purchased shall be allocated to the land alone when at the time of purchase the buildings thereon are intended to be demolished. Providence Journal Co. v. Broderick, 104 F.2d 614 (C.A. 1, 1939); Liberty Baking Co. v. Heiner, 37 F.2d 703 (C.A. 3, 1930); Montgomery Co. v. Commissioner of Internal Revenue, 330 F.2d 950 (C.A. 6, 1964); Lesser v. Commissioner of Internal Revenue, 42 T.C. 688 (1964), aff'd 352 F.2d 789 (C.A. 9, 1965), cert. denied, 384 U.S. 927, 86 S.Ct. 1442, 16 L.Ed.2d 530 (1966), motion to remand denied, 384 U.S. 982, 86 S.Ct. 1884, 16 L.Ed.2d 1002 (1966).

In the last cited case the Tax Court said in part:

"[T]he rule has long been established that where one purchases property

---

2. We believe these cases are not sufficiently similar on their facts to be given the weight the District Court Judge gave them as precedent for his decision. In *Wolters* the taxpayers purchased and demolished buildings—but they were not the owners of and did not purchase the land. And the *Millinery* and *World Publishing* cases did not involve any question of building demolition.

with intention of demolishing or removing a structure, that portion of the purchase price otherwise allocable to the demolished part must be treated as allocated to the remaining property. Cf. Blumenfeld Enterprises, 23 T.C. 665, 670, affirmed, 232 F.2d 396 (C.A. 9); Lynchburg National Bank & Trust Co., 20 T.C. 670, 673–674, affirmed on another ground 208 F.2d 757 (C.A. 4); Hillside National Bank, 35 T.C. 879; N. W. Ayer & Son, Inc., 17 T.C. 631, 635." Lesser v. Commissioner of Internal Revenue, 42 T.C. 688, 705 (1964).

And in the *Providence Journal* case, the Court of Appeals for the First Circuit said:

"The intention at the time of the purchase fixes the nature of the transaction. The taxpayer here desired to buy a certain lot for the erection of a new building. To get the lot it was necessary to take the buildings on it. After the land had been cleared, at the commencement of the new construction which the taxpayer had in view from the beginning, the lot stood the taxpayer the cost of the land and buildings plus the cost of removing the then useless buildings." Providence Journal Co. v. Broderick, 104 F.2d 614, 616 (C.A. 1, 1939).

Business losses and depreciation of property are dealt with in the Internal Revenue Code in sections 165 and 167 respectively:

"Sec. 165. *Losses*.

"(a) *General Rule*.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

"(b) *Amount of Deduction*—For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

"(c) *Limitation on Losses of Individuals*.—In the case of an individual, the deduction under subsection (a) shall be limited to —

"(1) losses incurred in a trade or business;

"(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * * " 26 U.S.C. § 165 (1958).

* * * * * *

"Sec. 167. *Depreciation*.

"(a) *General Rule*.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income.

* * * * * *

"(f) *Basis For Depreciation*.—The basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain on the sale or other disposition of such property." 26 U.S.C. § 167 (1958).

And there is a Treasury Regulation which deals directly with demolition of buildings. This first part of this regulation provides:

"Treasury Regulations on Income Tax (1954 Code):

"§ 1.165–3. *Demolition of buildings*.

"(a) *Intent to demolish formed at time of purchase*. (1) Except as provided in subparagraph (2) of this paragraph, the following rule shall apply when, in the course of a trade or business or in a transaction entered into for profit, real property is purchased with the intention of demolishing either immediately or subsequently the buildings situated thereon: No deduction shall be allowed under section 165(a) on account of the demolition of the old

buildings even though any demolition originally planned is subsequently deferred or abandoned. The entire basis of the property so purchased shall, notwithstanding the provisions of § 1.167 (a)–5, be allocated to the land only. Such basis shall be increased by the net cost of demolition or decreased by the net proceeds from demolition." Treas. Reg. § 1.165–3 (1960).

■ The District Judge felt that this regulation was not applicable since it related directly to section 165 which dealt with "losses." The District Judge apparently felt that the purchase of realty with the intention to demolish buildings thereon did not result in a "loss." In this view we agree.

We do not, however, agree that the quoted regulation is as limited in application as the District Judge felt it was. The regulation appears to be designed to deal generally with the problem of demolition of buildings—particularly when the intent to demolish is formed at the time of purchase. In addition, the last two sentences of the quoted paragraph with their reference to section 1.-167(a)–5 appear clearly to reject depreciation or amortization of such costs.

"The entire basis of the property so purchased shall, notwithstanding the provisions of § 1.167(a)–5, be allocated to the land only. Such basis shall be increased by the net cost of demolition or decreased by the net proceeds from demolition." Treas.Reg. § 165–3 (1960).

We regard these sentences as intended to negate any possible application of depreciation or amortization under the facts of this case.

The remaining question is then whether or not Regulation 1.165–3 is a reasonable interpretation of the Internal Revenue Code of 1954—particularly in view of section 167 relied upon by the District Judge and sections 212 and 162 cited by appellant. We believe that it is.

Regulation 1.165–3 is a new version of an older regulation which was first promulgated in 1921:

"Art. 142 *Voluntary removal of buildings.*— * * *

"When a taxpayer buys real estate upon which is located a building which he proceeds to raze with a view to erecting thereon another building, it will be considered that the taxpayer has sustained no deductible loss by reason of the demolition of the old building, and no deductible expense on account of the cost of such removal, the value of the real estate, exclusive of old improvements, being presumably equal to the purchase price of the land and buildings plus the cost of removing the useless building." Treas.Reg. 45, Art. 142 (1921).

■ Both the length of time this general administrative interpretation has been in effect and the fact that in the intervening years Congress has not amended the Internal Revenue Code to alter this interpretation are due some weight in our consideration of our instant problems. See, e.g., Cammarano v. United States, 358 U.S. 498, 510–511, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959); Fribourg Navigation Co. v. Commissioner of Internal Revenue, 383 U.S. 272, 283, 86 S.Ct. 862, 15 L.Ed.2d 751 (1966).

■ We believe the weight of authority supports both our holding that Regulation 1.165–3 is a reasonable regulation and that it is applicable to the present facts. Providence Journal Co. v. Broderick, 104 F.2d 614 (C.A. 1, 1939); Liberty Baking Co. v. Heiner, 37 F.2d 703 (C.A. 3, 1930); Montgomery Co. v. Commissioner of Internal Revenue, 330 F.2d 950 (C.A. 6, 1964).

The decision of the District Court in the instant case has been the subject of critical consideration in an interesting comment in 65 MICH.L.REV. 366 (1966) and in an opinion by the United States District Court in Massachusetts which was subsequently affirmed by the Court of Appeals for the First Circuit. Meyer v. United States, 247 F.Supp. 939 (D. Mass. 1965), aff'd per curiam, 362 F.2d 264 (C.A. 1, 1966). The First Circuit

view is clearly in favor of giving effect to Treasury Regulation § 1.165–3.

We hold that Regulation § 1.165–3 is a reasonable interpretation of Internal Revenue Code §§ 165 and 167 and that it should have been applied in this case. As a matter of law, plaintiffs were not entitled to the refunds they sought.

Reversed and remanded for dismissal of the complaint on the merits and the entry of judgment for defendant.