**1246**

## MONTGOMERY NATIONAL BANK, Mt. Sterling, Kentucky

v.

## UNITED STATES of America.

### No. 2061.

United States District Court,
E. D. Kentucky,
Lexington Division.

May 3, 1971.

———◆———

Clay & Marye, Mt. Sterling, Ky., for Montgomery National Bank.

Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., Stephen J. Csontos Tax Division, Dept. of Justice, Washington, D. C., for the United States.

MEMORANDUM

SWINFORD, District Judge.

This case is before the court for judgment on the record. The controversy revolves around a dispute as to whether the plaintiff, Montgomery National Bank (hereinafter the Bank) should have been allowed an income tax loss deduction for the demolition of a building it purchased in June of 1963.

In 1967 a proposed deficiency assessment of $23,196.56 for the tax year of 1964 was made by the Internal Revenue Service against the Bank. The Bank contested the assessment, but elected to pay it on February 15, 1968, while simultaneously filing a claim for a refund of an equal amount. The refund claim was denied and this suit was thereafter instituted.

Under section 165 of the Internal Revenue Code of 1954, a taxpayer is allowed to deduct a loss for buildings which he has demolished if such buildings were purchased with an intention not to have them destroyed. Where property is purchased with a clear intention to keep and use the buildings thereon, but at some date after the purchase it becomes apparent that the buildings must be demolished, the taxpayer is allowed a deduction for the lost value of the destroyed structures. If on the other hand, the property is acquired with the intention to have the buildings thereon razed, then the taxpayer is not allowed a deduction. In such a case it is presumed that the entire purchase price was paid for the cost of the lot, without regard for the buildings on it. In fact where the taxpayer buys property with the intention to demolish whatever buildings are located on it, the cost of the actual demolition is added to the taxpayer's basis.

The resolution of this case resolves to a question of fact upon which both sides have adduced persuasive evidence. The court must decide whether the Bank, at the time the contract of purchase was executed, intended to remodel the structure on the property or intended to demolish that building and erect a new fa-

cility. In deciding this question the court makes the following findings of fact and conclusions of law.

### Findings of Fact

1) The court has jurisdiction of the parties and subject matter of this litigation.

2) On March 4, 1963, the Bank's Board of Directors authorized C. B. Ledford, one of the Bank's Directors, to secure an option to purchase the Trimble Theatre building located on Main Street in Mt. Sterling, Kentucky.

3) On June 17, 1963, the option was exercised and the property was purchased at a price of approximately $82,000.00.

4) The purpose of the acquisition was to give the Bank an additional facility that would include a drive-in window.

5) On June 26, 1963, shortly after the property was purchased, E. O. Crooks, the Bank's Executive Vice President, wrote a letter to the Bank Building and Equipment Corporation of America stating that the Bank had just purchased a building which it intended to raze and that the Bank was interested in any plans or suggestions that the Bank Building and Equipment Corporation might have to offer.

6) It appears from the testimony and affidavits of various members of the Bank's Board of Directors that Mr. Crooks was not authorized to make inquiries concerning the construction of a new building. The minutes of the Directors meeting on September 9, 1963, show that it was their unanimous decision that the building should be remodeled. On that date the Board voted to attempt to negotiate a contract with the Bank Building and Equipment Corporation of America for the remodeling of the building. The minutes state:

"On motion duly made, seconded and all present voting aye, with the exception of Richard P. Winn, who abstained, a motion was made to negotiate, if possible, a contract with the Bank Building Corporation of Ameri-

ca for the remodeling of the Trimble Theatre building into new banking quarters for this bank."

7) The contract offered by the Bank Building and Equipment Corporation of America was unsatisfactory and negotiations with that firm were terminated in October of 1963.

8) On December 9, 1963, the Board of Directors authorized E. O. Crooks to negotiate a contract with the Ohio Bank Building and Equipment Company for the remodeling of the Trimble Theatre. The minutes for that meeting state:

"RESOLVED, That if an agreement can be negotiated that is satisfactory to counsel, the Executive Vice President of this bank be, and he is hereby authorized to enter into a contract with Lew Smeltzer, Inc., D. B. A. Ohio Bank Building and Equipment Company for the remodeling of the Trimble Theatre Building into bank quarters and for the furnishing and equipment of it as such."

9) On December 10, 1963, the Bank entered into an agreement with the Ohio Bank Building and Equipment Company whereby said company was authorized to remodel the Trimble Theatre building. Various plans and preliminary sketches were submitted by the Ohio Bank Building and Equipment Company. These preliminary plans revealed that it would have been impractical to remodel the existing structure, and it was therefore suggested that the building be demolished and a new one erected.

10) On January 13, 1964, the Board of Directors agreed that it was impractical to attempt to remodel the existing structure and voted to construct a new building. The minutes of that meeting state:

"WHEREAS, the Ohio Bank Building and Equipment Company has concluded it is impractical to try to force a banking function into the existing building, and

"WHEREAS, the Board has concluded that a new building can be constructed at a lower cost than the expense of re-

modeling the Trimble Theatre building,

"NOW, therefore, BE IT RESOLVED, that David P. Oldham, President of Montgomery National Bank be, and he is hereby authorized to enter into a contract with the Ohio Bank Building and Equipment Company to demolish the Trimble Theatre Building and to prepare plans and specifications for erection, furnishing and equiping of new quarters on the site of the Trimble Theatre for the Montgomery National Bank."

11) The Trimble Theatre building was demolished in March of 1964 and construction on a new facility was begun.

### Conclusions of Law

Based upon the foregoing findings of fact, the court makes the following conclusions of law.

1) The minutes and actions of the Bank and its Board of Directors clearly establish that it was the Bank's intention, at the time of acquisition, to have the Trimble Theatre building remodeled. Although inferences to the contrary may be drawn, the court believes that the substantive evidence presented in this case demands such a conclusion. The contract of purchase was perhaps entered into somewhat hastily and somewhat blindly, but this does not detract from the fact that the Bank sincerely desired to utilize the existing structure and negotiated a contract for the specific purpose of having the Trimble Theatre building remodeled.

2) If it is established that a taxpayer did not, at the time of purchase, intend to demolish the buildings existing on the acquired property, but rather intended to use those buildings, and it then becomes necessary to have the buildings demolished, the taxpayer is entitled to a loss deduction. Internal Revenue Code of 1954, section 165; Federal Tax Regulations, section 1.165–3; Providence Journal Co. v. Broderick, 104 F.2d 614 (1 Cir. 1939); Bender v. United States, 383 F.2d 656 (6 Cir. 1967); and Montgomery Co. v. Commissioner of Internal Revenue, 330 F.2d 950 (6 Cir. 1964).

3) The Bank was entitled to deduct on its 1964 income tax return a demolition loss in the amount of the value of the Trimble Theatre building as calculated pursuant to section 1.165–1, paragraph C of the Federal Tax Regulations.

An order shall this day be entered in accordance with the findings of fact and conclusions of law expressed in this memorandum directing judgment for the Montgomery National Bank in the amount of Twenty-Seven Thousand Two Hundred Fifty-Six Dollars and Four Cents ($27,256.04) plus interest thereon from February 15, 1968.